[File No. 6055.]

EDWARD EDWARDS, Respondent, v. MALCOLM McKECHNIE, Appellant.

(243 N. W. 923.)

Opinion filed August 18, 1932.

W. H. Adams, for appellant.

E. R. Sinkler and Asmundur Benson, for respondent.

Nuessle, J. Plaintiff brought this action claiming to recover actual and exemplary damages for that the defendant had wilfully alienated the affections of the plaintiff's wife. The defendant, answering, in effect denied generally the allegations of the complaint. The case was tried to a jury. The plaintiff had a verdict. Thereafter the defendant, having laid the proper foundation therefor, moved for judgment notwithstanding the verdict or for a new trial. He predicated this motion on the alleged insufficiency of the evidence to sustain the verdict; on error of the court in rulings during the course of the trial; and on account of error in the instructions. The motion was denied and judgment was entered on the verdict. Thereupon the defendant perfected this appeal from the judgment and from the order denying his motion.

Defendant grounds this appeal on points urged by him in support of his motion for judgment notwithstanding the verdict or for a new trial. His first contention is that the evidence is insufficient to sustain the verdict as returned. The record is of some length. In determining the sufficiency of the evidence to sustain the verdict, we must, of course, adopt that version of it which is most favorable to the plaintiff. So viewed we think that the record may be said to show the following salient facts: The plaintiff Edwards came to North Dakota from Illinois in the spring of 1914. A short time thereafter the woman whom he afterwards married also came to North Dakota. In the fall of 1914 they were married by the county judge at Towner. Thereafter she lived with him as a faithful, affectionate and loving wife until she met and became acquainted with the defendant. She says, however, (she was called as a witness for defendant) that she met Edwards in Illinois; that she agreed to marry him there; that a ceremony was performed which she thought constituted a valid marriage; that under that assumption she came to North Dakota and lived with him as his wife; thereafter she learned that no valid ceremony had been performed and that in fact they were not husband and wife, so she insisted upon an-

other ceremony being performed. In any event, they were married at Towner in the fall of 1914 and thereafter lived together as husband and wife for a number of years. One child was born to them. At the time of her marriage to Edwards she was a widow. She then had one child, a son. In 1921, plaintiff and his wife rented a farm from the defendant. They lived on this farm. Defendant came there off and on. Plaintiff says he usually timed his visits when plaintiff was away from the house. In 1925, plaintiff's wife went by train to Minneapolis. Defendant boarded the same train at another station and also went to Minneapolis. Defendant says that this was a mere coincidence; that the occasion of his going was that there was a cheap excursion, of which he took advantage. One witness, however, testified that he had inquired of her when Mrs. Edwards was going to go and she had told him. Plaintiff also testifies that on one occasion when he unexpectedly returned to his house while the defendant was there, he found the defendant sitting in a rocking chair and holding Mrs. Edwards on his lap. The son of the plaintiff testified that once when the defendant was at his father's house he looked through the bedroom window and saw the defendant and his mother standing by the bed and that the defendant had his arms around Mrs. Edwards. In 1926, plaintiff, Mrs. Edwards, and their son set out to drive by automobile to Kentucky to visit relatives. When they reached St. Paul, Mrs. Edwards refused to go any further and demanded money for a ticket to return to North Dakota. Plaintiff was willing to provide a ticket for her to Kentucky but refused to give her money to return to North Dakota. However, she insisted on returning. Plaintiff then left her in the railroad station at St. Paul and he and his son drove on to complete their visit. Mrs. Edwards returned to North Dakota and lived with her elder son, plaintiff's stepson, who had a farm there. It appears that some time before this defendant had loaned his elder son, who was a minor, money wherewith to buy a farm. In the spring of 1927, plaintiff and his son returned to North Dakota. His wife refused to live with him. Thereupon he instituted the present action. In his complaint he charged the defendant generally with alienating his wife's affections and specifically with having had improper relations with her, and with other misdoings. Thereafter Mrs. Edwards brought an action for divorce on the grounds of nonsupport and cruelty, charging

cruelty in that plaintiff in his complaint in the instant case had maliciously made unjust accusations against her concerning her relations with defendant and had otherwise mistreated her. The divorce action came on for trial but was continued until the instant case should be disposed of. This case, however, was delayed for one reason or another. Finally, in June, 1929, the divorce action was brought to trial, Edwards defaulting, and a judgment of divorce was awarded to Mrs. Edwards. In December, 1929, Mrs. Edwards and the defendant were married and she was at the time of the trial of the instant case in July, 1931, living with the defendant as his wife.

The version of the facts given above is that which is most favorable to the plaintiff. Many of the acts and occurrences to which the plaintiff and the plaintiff's witnesses testified are denied in toto by the defendant and by Mrs. McKechnie. But the questions of the credibility of the witnesses and of the weight of the evidence and the inferences to be drawn therefrom, were for the jury. Furthermore, the trial judge who saw and heard the witnesses was of the opinion that the verdict should not be disturbed. Under these circumstances we must hold that the evidence is sufficient to sustain the verdict.

The defendant predicates error on certain rulings of the trial court made during the course of the trial. When Mrs. McKechnie was on the stand as a witness for the defendant inquiry was made concerning the alleged marriage ceremony performed in Illinois. She was asked: "Did you later learn that this was not a marriage?" She answered, "Yes, my sister written to me after I was up here." This answer was stricken on motion of the plaintiff on the ground it was hearsay. Defendant contends that this ruling was erroneous; that the answer was proper and should have been allowed to stand; that it was elicited not to prove the fact of the ceremony and that it was void, but to establish Mrs. McKechnie's state of mind on learning of the alleged invalid marriage and of the deceit that the plaintiff had practiced on her. However, it is unnecessary for us to pass upon the propriety of this ruling. In any event, defendant could not have suffered prejudice on account of it for the reason that immediately thereafter counsel asked "How did you come to have this marriage in Towner?" and the witness answered "Because my sister wrote to me and told me Mr. Edwards didn't marry me, to come home. I told him I was going home if he didn't marry me.

Then we went to town and was married." Thus it is apparent that even though the ruling of which the defendant complains was erroneous, the testimony was immediately thereafter elicited and remained for the jury's consideration.

The next ruling of which the defendant complains occurred while Mrs. McKechnie was being examined by counsel for the defendant, as follows:

"By Mr. Benson: If the Court, please, the defendant is nodding his head to the witness.

"By Mr. Adams: That is objected to as a mistake (misstatement?) by the counsel to prejudice the jury.

"By Mr. Benson: It certainly is not a mistake (misstatement?).

"By the Court: Sit down, Mr. McKechnie and be quiet." ·

The record stands just as detailed above with nothing explanatory of the occurrence. The point of the defendant's contention is that the trial court made no ruling on either the remark of counsel for the plaintiff or the objection of counsel for the defendant, and that by his command directed to the defendant tended to impress the jury with the idea that the defendant had done or was doing something that was reprehensible. Of course the trial judge is charged with the conduct of the trial. He is vested with a large discretion. His action in that regard is not ground for a reversal, unless it affirmatively appears there was an abuse of discretion on his part. Standing as it does the record does not disclose such an abuse. The only explanation of this occurrence is the statement in the trial court's memorandum, and without quoting this statement it is sufficient to say that no error is shown such as will justify a reversal.

Finally, the defendant complains because of the charge of the court respecting the effect to be given by the jury to the judgment of divorce entered in the action brought against the plaintiff by his wife. The instant defendant contended that he had done nothing which in any way tended to alienate the affections of plaintiff's wife; that whatever change in her affections had taken place resulted not on account of his acts or importunities but because of the acts and conduct of the plaintiff himself, and particularly because of the false charges of improper relations made against Mrs. Edwards in the complaint in the instant action. The making of these charges constituted one of the acts of

cruelty that Mrs. Edwards set out in her complaint in the divorce action. The complaint in that action was offered in evidence in the instant case by the defendant, together with the answer and the judgment as finally entered. In the divorce action the allegations of the complaint were found to be true. With respect to the judgment in the divorce case the court in his instructions in the instant case, charged: "You, Gentlemen of the Jury, are not bound in any way by the recitals in the decree of divorce received in evidence except as it may establish the fact of a divorce and you are to consider it only on that point. On the matter in issue in this action you are to make your decision from the evidence here offered on the stand before you. Consider it all fairly and impartially, without any passion, prejudice or sympathy." The instructions were in writing. They are not made a part of the record. We have before us only that portion thereof above quoted which we find set out in defendant's fifth assignment of error. Though this fragment of the instructions be considered alone, we are of the opinion that it is not subject to the defendant's challenge. The defendant was a stranger to the action in which the judgment for divorce was rendered. He was no more affected by the determination of the issues in that action than was any other individual not a party to the action. The judgment of divorce was admissible only to establish the marriage and the divorce. The findings of fact made by the court on the issues in the divorce action were not admissible and binding as against either the plaintiff or the defendant in the instant action. Except in so far as it was a judgment in rem—that is, except in so far as it affected the marital status of the parties—the rule with respect to the effect of judgments generally was applicable here as in other cases. See Luick v. Arends, 21 N. D. 614, 132 N. W. 333, and cases cited; 19 C. J. 22.

Affirmed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.