[File No. 7060]

RUTH SCHILLERSTROM, Appellant, v. DUANE SCHILLERSTROM, Respondent.

(32 NW2d 106, 2 ALR2d 271)

Opinion filed April 7, 1948

*Floyd B. Sperry* and *Sullivan, Fleck, Kelsch & Lord,* for appellant.

*G. L. Dosland* and *J. E. Hendrickson,* for respondent.

GRONNA, District Judge. On October 6, 1942, the wife, Ruth Schillerstrom, plaintiff and appellant, commenced this divorce action in the District Court of Norton County, against her husband, Duane Schillerstrom, defendant and respondent. On October 12, the Summons and Complaint were served upon the husband personally in Minneapolis, Minnesota.

The wife's Complaint alleged a sufficient cause of action for divorce, and also alleged:

"That the plaintiff is now, and has been for more than one year last past, a resident of the State of North Dakota."

Of date October 22, the husband, by his attorney Roy E. Rendahl of Minneapolis, made an Answer, verified by the husband personally. This Answer denied the truth of the wife's alleged cause of action and, among other allegations, contained this denial:

"Further answering, the Defendant specifically denies that the Plaintiff herein has been a resident of the State of North Dakota for a period of one year immediately last past as alleged in paragraph 2 of her Complaint."

On October 22, Attorney Rendahl wrote to the wife's Attorney, Mr. Sperry:

"I enclose herewith Answer in the above entitled action and ask that you admit service on the original . . . ."

On October 26, Mr. Sperry replied:

"Dear Mr. Rendahl: I herewith enclose your Answer in the above matter, with my admission of service."

On November 9, Attorney Rendahl replied:

"I have your letter of October 26, 1942, together with the stipulation and wish to advise that I have gone over this matter very carefully with Mr. Schillerstrom and the terms therein are satisfactory. . . ."

On November 21, Attorney Rendahl wrote:

"Dear Mr. Sperry: I enclose herewith stipulations in the above entitled matter in accordance with your request and ask that you have your client sign the same and return one copy to me. I would also appreciate having a copy of the divorce decree."

The written "Stipulation" was signed by the parties in the presence of their respective attorneys (the wife signing in North Dakota, and the husband signing in Minneapolis), and reads as follows:

"(Venue and title)

WHEREAS, Ruth Schillerstrom, and Duane Schillerstrom, are husband and wife, and are the parents of a minor child, the said Ruth Schillerstrom having commenced an action against her husband for a divorce, said parties desiring to effect an amicable agreement, subject to the approval of the court,

IT IS THEREFORE AGREED by and between said parties, as follows:

1. That said divorce action may be brought on for trial by the plaintiff, immediately upon the execution of this stipulation, without further notice to said defendant, said defendant having answered herein, and said defendant hereby agreeing to withdraw said Answer upon the execution of this agreement.

2. That the plaintiff have the custody of the minor child of said parties, with reasonable visitation privileges to the defendant, and that the defendant shall pay for the care and support of said child, the sum of $5.00 per week, beginning with the first day of November, 1942, said payments to be made twice monthly, upon the first and 15th days of each and every month until said child arrives at the age of 18 years of age, or until the further order of this court.

3. That the said Duane Schillerstrom shall also pay unto the plaintiff for attorney fees and expenses herein, the sum of $12.-05, as costs, and the sum of $50 for the plaintiff's attorney, and in addition he shall pay the fees and charges of his own attorney.

4. That each of said parties shall retain the property jointly

or separately owned by them, now in his or her respective possession.

Dated November 20, 1942.

(signed by the parties personally, and witnessed by their respective attorneys and one additional witness)."

On November 24, 1942, the trial took place before Judge Berry (who died on July 16, 1944). The wife and her corroborating witness appeared in person, with her attorney, Mr. Sperry, but neither the husband nor his attorney appeared at the trial.

Because of the interest of the State in the continuance of the marriage relation, our statutes require that, even though the defendant should default, there must be an actual trial of every divorce action, at which evidence must be presented, and that the testimony of the plaintiff must be corroborated. The statute, Rev Code 1943, 14–0519, reads:

"14–0519. Affirmative Proof Required. No divorce can be granted upon the default of the defendant, nor upon the uncorroborated statement, admission, or testimony of the parties, nor upon any statement or finding of the fact made by a referee; but the court, in addition to any statement or finding of the referee, must require proof of the facts alleged."

Rev Code 1943, 28–0908 requires that:

"In divorce cases upon default, the testimony must be taken, transcribed, and filed in the office of the clerk at the expense of the producing party."

The object of the provisions of these two statutes is to prevent the obtaining of a divorce by fraud and collusion between the parties, where no lawful ground for divorce exists. Clopton v. Clopton, 11 ND 212, 91 NW 46; Tuttle v. Tuttle, 21 ND 503, 131 NW 460, Ann Cas 1913B 1; Thompson v. Thompson, 32 ND 530, 156 NW 492.

In Smith v. Smith, 7 ND 404, 413, 75 NW 783, 785, this Court said:

"In a divorce case the sovereign state is always present as a party in the action, not technically, but actually and potentially, a party. The state represented by the court is there to see to

it that no mere transient inhabitant, whose domicile is elsewhere, shall call upon the courts of this state to adjudicate upon the marital relations of citizens of other states or nations."

At the trial herein, Judge Berry conducted the trial in accordance with the statutes, including §§ 14–0519 and 28–0908, supra. The Reporter's transcript was properly filed. It included the following testimony of the wife upon the issue of her domicil and the duration thereof:

"Q. Now you and your husband lived in Moorhead and you worked at Fargo for some time, is that correct?

A. Yes.

Q. Then about two years ago you returned to your parents at Hazen, North Dakota?

A. Yes.

Q. And you are a resident of the State of North Dakota are you not?

A. Yes.

Q. And you have considered that your residence for about how long?

A. *Since I left that first time about two years ago.*

Q. About two years ago?

A. Yes.

Q. Your folks have lived at Stanton for some time?

BY THE COURT:

Q. Hazen, isn't it?

A. Yes."

On December 5, 1942, Judge Berry signed the Findings of Fact, Conclusions of Law, and Order for Judgment, wherein the said "Stipulation" was set forth verbatim. The finding of fact as to residence read as follows:

"That the plaintiff now is, and for more than one year prior hereto, has been a resident of the State of North Dakota."

The grounds for divorce alleged in the complaint were extreme cruelty and willful neglect. CL 1913, § 4380 (ND Rev Code 1943, 14–0503). The Court made Findings of Fact in favor of the plaintiff on both of these grounds. A consideration of the evi-

dence adduced, which was transcribed and which is part of the record on this appeal, shows that the findings of the trial court were well sustained by the evidence.

On December 16, 1942, judgment of divorce was entered and docketed in the District Court of Morton County. The order for judgment and the judgment decreed:

"5. That each of said parties may re-marry after the expiration of 30 days from the date of entry of this judgment."

Rev Code 1943, 28–2002 requires that notice of entry of judgment must be served, in an action in which an appearance has been made. The defendant, through his attorney, admitted service of the judgment. That is to say,

Attorney Rendahl wrote on January 22, 1943:

"Dear Mr. Sperry: I acknowledge receipt of stipulation and judgment in the above entitled matter and wish to thank you for the same. I delayed writing you until I could talk to Mr. Schillerstrom personally . . . ."

The judgment provided that the defendant pay unto the said plaintiff "the sum of $5.00 per week, beginning with the first day of November, 1942, said payments to be paid upon the 1st and the 15th of each month thereafter, until said minor child becomes 18 years of age, or until the further order of the court, said weekly payments being for the support of said minor child." The record shows that the defendant made such payments as provided in the judgment.

On January 25, 1946, the defendant, having retained other attorneys, Mr. Hendrickson and Mr. Dosland, obtained from the District Court of Morton County, Judge Broderick presiding, an order to show cause why the judgment should not be vacated.

An order to show cause is the legal equivalent of a notice of motion. Rev Code 1943, 28–2817 reads as follows:

"28–2817. Service May Be Fixed by Order to Show Cause. In lieu of notice (of motion), the court may issue an order to show cause and therein may prescribe the time and manner of service."

" 'An order to show cause is a notice of motion and a citation

to the party to appear at a stated time and place to show cause why a motion should not be granted.' . . . 'There is an indistinct idea that by an order to show cause the court has, as it were, passed upon the merits, unless the opposing party can reverse its opinion. But this is incorrect. It is not to be understood that when a court grants an order they express in any degree an opinion on the merits. It would be unjust for the court to do so, because the order is ex parte, and the opposing party ought not to be, and is not, prejudiced. In granting an order to show cause, the court looks not at the merits, but at the question whether there is a necessity for a shorter notice than that of eight days.' " First Nat. Bank & T. Co. v. Krogh, 70 ND 363, 367, 294 NW 660.

The motion to vacate and set aside the judgment was made: "on the ground and for the reason that the Court had no jurisdiction over the parties or the subject matter herein at the time of the entry of judgment, or at any time from the issuance and service of the Summons and Complaint herein."

"It being further made to appear herein by the Affidavit hereto attached that the plaintiff at the time of the commencement of the action herein had not been a bona fide resident of the State of North Dakota for a period of one year immediately preceding the commencement of said divorce action."

At the time set for the hearing of the Motion to Vacate, the plaintiff, by her attorney, made a Motion to Quash such Motion to Vacate on the ground that the action was no longer pending, and had terminated, and that the power of the District Court over the judgment had absolutely ceased, and that it was without jurisdiction to vacate it. The Motion to Quash was denied and this Court held that the order of denial was not appealable. Schillerstrom v. Schillerstrom (1946) 74 ND 761, 24 NW2d 734.

Thereafter and on the 9th day of January, 1947, the District Court proceeded to hear the testimony in support of the Motion to Vacate. The plaintiff made timely and proper objections to the introduction of evidence and the objections were overruled.

(The transcript of the proceedings and testimony on Motion to Vacate is contained in 160 typewritten pages.)

On March 10, 1947, the District Court made its order vacating and setting aside the judgment, which order reads in part as follows:

"On the 9th day of January, 1947, the matter came on to be heard upon its merits upon Stipulation between the parties hereto, and proof having been presented to this Court in the form of oral testimony and affidavits, and the Court having examined all of the records and files in the original divorce proceedings, as well as the testimony of the plaintiff given upon the trial and having duly considered all the proof offered on the part of the plaintiff and defendant, and having also considered the briefs and argument on the part of counsel for both parties, and being fully advised on the premises,

It is ordered, that the Judgment and Decree heretofore entered in this Court on the 16th day of December, 1942, be and the same is in all things hereby vacated and set aside for want of jurisdiction of this Court over the parties hereto or the subject matter.

It is further ordered, that because of the foregoing facts the plaintiff's action for divorce filed in this Court be and the same is hereby in all things dismissed without prejudice."

The facts appearing upon the hearing of the Motion to Vacate are briefly: The plaintiff was born in Mercer County, North Dakota, in March, 1920. She lived there continuously with her parents until she was graduated from high school in 1938. Then she went to Fargo, North Dakota, and attended a beauty culture school. The defendant was born in Moorhead, Minnesota, about 1915 and lived there with his parents up to the time of his marriage. Fargo and Moorhead are twin cities. The parties were married on December 31, 1938, the plaintiff being eighteen years of age and the defendant twenty-three. Through her marriage, her husband's domicil, Minnesota, became her domicil by operation of law. Prior thereto her domicil had always been North Dakota, her domicil of origin. Until July, 1939, they lived with his parents in Moorhead where he was working as a printer.

She continued attending the beauty culture school in Fargo. In March of 1939 she commenced working as a beautician in Fargo. They never acquired a home of their own, never lived in a rented house but always lived in rented rooms, moving every few months. In October, 1939, they moved into a house-keeping room in Fargo, North Dakota. Defendant continued to work as a printer in Moorhead and the plaintiff continued to work in Fargo, working as a beautician during the day and as a waitress in a cafe at night, working as many as 18 hours a day. Marital difficulties arose and in January, 1940, they separated. She remained in Fargo and he returned to Moorhead to live. They consulted an attorney regarding a divorce but no action was commenced. In February she returned to her parents' home in Mercer County. In March she returned to Fargo and resumed her work. In April she became ill and while at a Fargo hospital, her husband visited her. In May, 1940, they became reconciled and moved into rented rooms in Moorhead, but only after she had obtained his promise that they would make their home in Fargo and that they would live in Moorhead only temporarily. But shortly after their reconciliation she became pregnant and on February 7, 1941, in Moorhead, their son, Jon Duane Schillerstrom was born. With respect to the conversations that took place between the parties at the time of their reconciliation in May, 1940, the plaintiff testified, in part, as follows:

"Q. Was anything said by Duane, at that time about arranging a home for you some place?

A. He said if I would come back to him that we would live by ourselves and he would get a different job and he was talking, at that time, about getting work at the Fargo Forum, that's what he told me.

Q. What was said, if anything, about where you would live?

A. Well, at that time, he still had employment at Melberg's Printing Company (in Moorhead) so I went over there to live at Hertz' with him until he found out whether he was going to work at the Fargo Forum and then we were going to go back to Fargo to live. We moved there once on that pretense.

Q. When was it he told you that he would arrange for a place to live in Fargo?

A. That was when—to get me to go back to him.

Q. That was at the time you went back to him after the first separation?

A. That's correct.

Q. And when you went back to him you still expected him to do that, is that correct?

A. Yes, I did.

Q. Well, did he arrange for a home in Fargo for you after that?

A. No.

Q. And did he obtain the employment from the Fargo Forum any time?

A. No."

Upon cross examination she testified in part as follows:

"Q. Well then, according to your testimony, you then lived continuously in Moorhead, Minnesota, from about December, 1940, until August 1st, 1942, is that correct?

A. Those were our temporary homes, yes.

Q. Yet, from time to time you lived at various addresses in the city of Moorhead?

A. But at the time that I left Duane the first time and went back to him, our home was supposed to be in North Dakota. Minnesota was not my residence. . . .

Q. (By Mr. Dosland) You have lived in Mercer County since about the first part of August, 1942?

A. That's correct.

Q. And prior to that you lived in Minnesota, is that right?

A. Temporarily, yes.

Q. What do you mean by temporarily, one or two days?

A. I didn't consider anytime over in Minnesota my home."

The defendant's version of the conversation that took place at the time of the reconciliation in May, 1940, is, in part, as follows:

"Q. Now, when you found your wife in the hospital there you asked her to return to you, did you not, and live with you again?

A. We had a talk I think, after that.

Q. Did you not promise her, at that time, you would arrange for a home of your own over in Fargo?

A. Not in Fargo, no.

Q. Never did?

A. No.

Q. *You tried to get work in Fargo?*

A. *That was our intention to move to Fargo substantially for job security.*

Q. You tried to get work at the Fargo Forum?

A. No, I did not."

The parties continued to live in rented rooms in Moorehead until the first week of August, 1942, when after disposing of their furniture and household goods they separated for the second and last time. The defendant remained in Moorhead and the plaintiff returned to her parents' home in Mercer County. She has lived in Mercer County ever since. The plaintiff never voted in Minnesota.

# I

## Plaintiff Acquired Domicil.

In one respect the hearing of the Motion to Vacate Judgment corroborated a finding of fact upon which that Judgment was based, namely, "domicil". Regardless of the duration thereof, plaintiff had acquired a domicil in North Dakota prior to the commencement of her action in October, 1942. She never voted in Minnesota, although she became twenty-one years of age in March, 1941. She and her husband had separated permanently during the first part of August, 1942, and she had no home to go to other than that of her parents in Mercer County, North Dakota, and which had remained her domicil of origin until her marriage at the age of eighteen. She had been away from her parental home for only three years and seven months, not excepting the visits there during such marital period. In the circumstances of this case her direct testimony does seem reasonable, especially in view of the fact that her choice of domicil was what was formerly her domicil of origin.

Minnesota, her matrimonial domicil, was no longer her choice after the parties had moved to Fargo, North Dakota, in October, 1939. Furthermore, she has lived in Mercer County ever since she and her husband separated. We conclude that the facts of her residence and her state of mind (animus manendi) united to form the concept of domicil within this state prior to the commencement of this action. In formulating this opinion we have considered the law governing the acquisition of a domicil of choice. With respect to the subject of domicil, Rev Code 1943, 14–0518, 54–0126, and 31–1103 (40) provide as follows:—

"14–0518. Presumption of Domicile. In actions for divorce, the presumption of law that the domicile of the husband is the domicile of the wife does not apply. After separation, each party may have a separate domicile, depending for proof upon actual residence and not upon legal presumptions."

In Williamson v. Osenton (1914) 232 US 619, 625, 58 L ed 758, 761, 34 S Ct 442, Mr. Justice Holmes delivered the opinion of the court, thus:

"The motive for the change was immaterial; . . . the plaintiff had a right to select her domicil for any reason that seemed good to her. With possible irrelevant exceptions the motive has a bearing only when there is an issue open on the intent. Cheever v. Wilson, 9 Wall (US) 108, 123, 19 L ed 604, 608; . . . However it may be in England, that in this country a wife in the plaintiff's circumstances may get a different domicil from that of her husband for purposes of divorce is not disputed and is not open to dispute. . . . This she may do without necessity and simply from choice, . . . ."

"Rev Code 54–0126. Residence; Rules for Determining. Every person has in law a residence. In determining the place of residence the following rules shall be observed:

1. It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose;
2. There can be only one residence;
3. A residence cannot be lost until another is gained;

4. The residence of the father during his life, and after his death, the residence of the mother, while she remains unmarried, is the residence of the unmarried minor children;

5. The residence of the husband is presumptively the residence of the wife;

6. The residence of an unmarried minor who has a parent living cannot be changed by either his own act or that of his guardian; and

7. The residence can be changed only by the union of act and intent."

"Rev Code 31–1103. Disputable Presumptions. . . . (The following are) disputable presumptions and may be contradicted by other evidence. The following are of that kind: . . . (40). A domicile once acquired is presumed to continue until it is shown to have been changed."

"Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear." Lincoln v. French (1882) 105 US 614, 26 L ed 1189.

It is a settled principle that every person must have a domicil somewhere. Every person has a domicil at every period of his life, and no person has more than one domicil at one time. Section 54–0126, supra; Northwestern Mortg. & Secur. Co. v. Noel Constr. Co. and J. A. Carter (1941) 71 ND 256, 300 NW 28, hereafter referred to as the "Carter Case". The words "residence" and "domicil" are not always synonymous at law, nor are they convertible terms when used accurately. McEwen v. McEwen (1924) 50 ND 662, 197 NW 862. But, as used in the various statutes, this depends upon the intent of the particular statute as ascertained by the construction of its provisions. Thus, 54–0126, supra, providing rules for determining residence, uses the term as equivalent to domicil. Carter Case (ND) supra, citing Enderlin v. Pontiac Twp. (1932) 62 ND 105, 242 NW 117. And under the statute with which we are especially concerned, 14–0517, infra, residence is synonymous with domicil. (Graham v. Graham (1899) 9 ND 88, 81 NW 44). But what is "domicil"? 54–0126 (1) supra, defines it in broad terms. The

Carter Case, 71 ND at 261, 300 NW 28, states, in effect, that this and the other provisions of such statute are merely a restatement of common law principles for determining domicil. The American Law Institute, Restatement, Conflict of Laws (1934), § 9 reads simply:

"9. Domicil is the place with which a person has a settled connection for certain legal purposes, either because his home is there, or because that place is assigned to him by the law."

Thus, a person's domicil is that state in which he either has or is deemed by law to have his permanent home. 17 Am Jur 588, Domicil, § 2; 28 CJS, Domicile, § 1. The law attributes to every person at birth a domicil which is called a domicil of origin. The domicil of origin is determined by the domicil, at the time of the child's birth, of that person upon whom he is legally dependent. 54-0126 (4) supra; 28 CJS, Domicile, § 5; 17 Am Jur 597, Domicil, § 13. The domicil of origin is retained until the acquisiton of a domicil of choice or one acquired by operation of law. In England the domicil of origin is never destroyed, but only remains in abeyance during the continuance of a domicil of choice, and reverts at once upon the abandonment of the domicil of choice. Udny v. Udny, LR 1 HL SC App Cas (Eng) 441, 9 ERC 782, cited in 19 CJ 427, § 55, note 58, Domicile, § 55. But the English rule of "Reverter to Domicil of Origin" has been held inapplicable as between the states of the United States. 28 CJS Domicile, § 13(e); 17 Am Jur 611, Domicil, § 34. However:

"Where facts are conflicting, the presumption is strongly in favor of an original, or former, domicile, as against an acquired one, . . . (section 16, note 89) . . . From the natural propensities of the human mind, one will more readily be presumed to intend returning to his earliest home than to a place of temporary abode." 28 CJS Domicile, § 13 (e), note 62.

As indicated above, domicil is of three sorts: namely, of origin, by choice, and by operation of law. 17 Am Jur 597, Domicil, § 12; 28 CJS Domicile, § 4. "Domicil by operation of law" is that domicil which the law attributes to a person independently of his own intention or actual residence. This re-

sults generally from legal domestic relations, as that of the wife arising from marriage, or the relation of parent and child, 28 CJS, Domicile, § 7; 17 Am Jur Domicil, p 598, § 15; p 614, § 38. Any person not under a disability may at any time change his (or her) existing domicil and acquire for himself (or herself) a domicil of choice by residing in a state other than that of his (or her) previous domicil, if this physical fact is accompanied by the required state of mind, or animus manendi. "The residence can be changed only by the union of act and intent (and) a residence cannot be lost until another is gained." Section 54–0126 (7 & 3), supra; State ex rel. Sathre v. Moodie, 65 ND 340, 355, 258 NW 558, 564; Carter Case, 71 ND 256, 262, 300 NW 28.

Evidence which is logically relevant and material to the issue of "change of domicil" is of a wide variety, for the concept of domicil is itself variable. Any act, event, or circumstance in the life of an individual may be evidence from which the state of mind, or animus manendi, may be inferred with more or less precision; and it is impossible to formulate any general rule by which the weight due to any particular point of evidence may be determined. 28 CJS Domicile, § 18. Not only does the strength of the evidence from which the intention may be inferred vary according to the inherent probability or improbability (Burke County v. Oakland (1927) 56 ND 343, 217 NW 643) of an alleged change of domicil, but the importance of similar facts may differ absolutely in different cases. The age, character, religion, occupation, business or profession, financial condition, and general circumstances of the person, and the climate and customs of the state in which his or her domicil is alleged to have been acquired, are considerations which may cause the value of a particular fact to vary almost indefinitely. In State ex rel. Sathre v. Moodie, 65 ND 340, 258 NW 558, supra, the fact that Governor Moodie had registered as a voter and voted at the June primary and at the November general election in Minnesota was regarded as strong circumstantial proof of his domicil in Minnesota; and cited in support of the point that voting is a fact entitled to great weight, were State v. Stoelting,

53 ND 736, 208 NW 101, and Kadlec v. Pavik, 9 ND 278, 83 NW 5. On the one hand, the intention must be clearly and unequivocally proved (Carter Case) especially where the change is to a foreign land. McEwen v. McEwen. But on the other hand it is unreasonable to require it to be proved by evidence which the person whose domicil is in question might not fairly be expected to have furnished, if he or she had, in fact, formed the intention. State v. Moodie. Direct evidence of intention is rarely accessible, but a person whose domicil is in question may himself (or herself) give evidence of his (or her) intentions, present or past. 28 CJS Domicile, § 17 (b & c); State v. Moodie. Evidence of this nature is to be accepted with considerable reserve, even though no suspicion may be entertained of the truthfulness of the witness. State v. Moodie, Residence itself raises a presumption of intention to reside in the same place, which is increased when the residence is continued for a long period, and may even be conclusive in the absence of explanatory circumstances. 28 CJS Domicile, §§ 16 & 18 (2); 17 Am Jur 638, Domicil, § 82; Summers v. Summers (1946) 74 ND 741, 24 NW2d 688; McEwen v. McEwen. But though a long residence, except in certain special cases, is always material as evidence, it is never essential, and very rarely decisive, for slight circumstances may serve to show the absence of a settled intention. Summers v. Summers. No particular length of residence is required to establish domicil. Any period of residence, however short, will suffice when coupled with intent.

"No particular length of time is required to enable a person to become a resident of the state . . . ." Enderlin v. Pontiac Twp. (1932) 62 ND 105, 114, 242 NW 117.

"The moving from one place of residence to another place with the intent to abandon the old residence and establish a residence at the new place, is in law a change of residence which may be accomplished in one day . . . ." Burke County v. Oakland, 56 ND 343, 347, 217 NW 643, supra.

"In order to acquire a domicil, both the fact and the intent must concur. . . . The length of the residence is immaterial

provided the other elements are present and are found to exist. A day or an hour, it has been said, will suffice for the acquisition of a domicil. Jacobs, Domicil, section 134, note." Winans v. Winans (1910) 205 Mass 388, 91 NE 394, 28 LRA NS 992, 995.

Am. Law Inst. Restatement of the Law, Conflict of Laws, section 15 (3), page 32, reads:

"s. 15 Domicil of Choice . . . (3) The fact of physical presence at a dwelling-place and the intention to make it a home must concur; if they do so, even for a moment, the change of domicil takes place."

## II

### Grounds upon Which Judgment Was Vacated

In vacating the judgment the District Court did not expressly hold that Plaintiff had not acquired a domicil in North Dakota prior to the commencement of this action. The court vacated the judgment upon the grounds:

(1) That jurisdiction had not been acquired over the subject matter for the reason that the plaintiff had not been domiciled within this state "for twelve months next preceding the commencement of the action" as required by § 14–0517, infra;

(2) That the District Court had not acquired *jurisdiction over the defendant* because the court did not have jurisdiction over the subject matter; and,

(3) That inasmuch as the plaintiff had testified falsely as to the duration of her domicil, she thereby procured the divorce by fraud perpetrated upon the court.

## III

### No Fraud

The defendant, as the moving party, failed to allege "fraud" in his motion papers and, moreover, at the hearing he failed to meet the burden of proof in support of the serious charge that the plaintiff had testified falsely as to the duration of her domicil and that she thereby procured the divorce by fraud. Wiemer v. Wiemer (1911) 21 ND 371, 130 NW 1015; Reeves v. Reeves (1909) 24 SD 435, 123 NW 869, 25 LRA NS 574;

Clark v. Clark (1922) 64 Mont 386, 210 P 93. See also annotations in 157 ALR 20 and 63; 88 ALR 1201; 49 ALR 1206 and 1219; LRA1917B 429; 60 Am St Rep 649.

In Yorke v. Yorke (1893) 3 ND 343 at page 352, 55 NW 1095, wherein a motion to vacate was granted for want of jurisdiction over the person of the defendant and because the judgment was procured by extrinsic fraud which deprived the defendant of her constitutional right of notice and an opportunity to be heard and which constituted a fraud upon the court, the court said:

"We do not intend to hold that the fact that the trial court found the appellant to be a resident of this state upon insufficient or false testimony would constitute legal fraud. Nor do we hold that the fact, if such it be, that the original decree was based entirely upon false or prejudiced evidence could be urged as a ground for annulling that decree. If the truth or falsity of the testimony upon which a judgment is based could be opened to subsequent inquiry, there would be no end of litigation. That matter must be regulated by the conscience of the witness, and the bar of the criminal court. 2 Bishop, Marriage, Divorce and Separation § 1571, and cases cited."

In Jacobson v. Brey (1942) 72 ND 269 at 277, 6 NW2d 269, the opinion reads:

"The rule supported by the overwhelming weight of authority is that fraud as a ground for vacating a judgment 'must be what is known as "extrinsic" fraud, that is, fraud in the means whereby the judgment was procured, and not fraud in the cause of action or matter put in issue and presented for adjudication.' 1 Freeman, Judgments, 5th ed pp 461, 462; 31 Am Jur 230, 231, Judgments."

However, we need not go into the law of "extrinsic fraud" inasmuch as there was no fraud. Plaintiff did not testify falsely when at trial she testified:

"Q. And you have considered that (i.e., North Dakota) your residence for about how long?

A. Since I left that first time about two years ago."

She had also testified that she and her husband had lived

in Moorhead, Minnesota. Thus, by implication or inference, she stated that she and her husband had separated once before and although they had become reconciled, she nevertheless considered North Dakota her domicil even during the period they had resided in Minnesota. Necessarily she was expressing an opinion when she testified that her domicil had been in this state for "about two years," inasmuch as domicil is a mere concept, that is, an abstract general motion or conception, consisting of a union between the fact of residence and a state of mind, animus manendi.

"When the crucial concept is as variable and amorphous as 'domicil', (it) is always a conclusion of 'ultimate fact', and can be established only by proof from which, as experience shows, contradictory inferences may be made as strikes the local trier's fancy." Mr. Justice Rutledge, dissenting in Williams v. North Carolina (1945) "Williams II" 325 US 226, 89 L ed 1577, 65 S Ct 1092, 1102, 157 ALR 1366.

It was her intent, and she believed it to be her husband's intent, that they should retain their domicil in North Dakota after the reconciliation which had taken place in Fargo in May, 1940. To a limited extent, the defendant husband admitted such an intent when he testified:

"Q. You tried to get work in Fargo?

A. That was our *intention to move* to Fargo substantially for job security."

As we have already shown "domicil" and not "actual residence without domicil" is the requirement of our divorce statute, 14–0517, infra. And notwithstanding long absence from this state, a domicil once established in this state continues to exist until a new domicil is acquired. Rev Code 31–1103 (40) and Summers v. Summers, 74 ND 741, 24 NW2d 688, and McEwen v. McEwen, 50 ND 662, 197 NW 862, both supra.

## IV

### In Personam Jurisdiction Acquired

The District Court erred in vacating the judgment on the ground that it had not acquired *jurisdiction over the defend-*

*ant* because the court had not acquired jurisdiction over the subject matter. It based such holding upon a dictum in Smith v. Smith (1898) 7 ND 404 at 413, 75 NW 783:

"Until this prerequisite (of domicil for the statutory period) is met, no lawful service of summons can be made."

Such dictum was delivered obiter in a divorce appeal wherein the invalidity of the judgment was based upon the fact "that the plaintiff was not domiciled in this state *any time* prior to the commencement of this action." That decision was not based upon the ground that the district court had not acquired jurisdiction over the defendant.

We realize that a voluntary appearance does not confer jurisdiction over the *subject matter,* for jurisdiction over the marriage status cannot be conferred upon the court by the parties. Jurisdiction over such marriage res is dependent upon its presence within the State of forum. Andrews v. Andrews (1903) 188 US 14, 47 L ed 366, 23 S Ct 237; Beale, Conflict of Laws (1935) § 111.1.

However, neither this court nor the U. S. Supreme Court has held that procedural due process would be violated when neither party was domiciled within the divorcing state, provided that in personam jurisdiction had been acquired over the defendant. No case has been cited which holds that plaintiff's domicil must be super-imposed upon a general appearance. It is historical that in personam jurisdiction may be grounded on physical or de facto power over the defendant's person. McDonald v. Mabee (1916) 243 US 90, 61 L ed 608, 609, 37 S Ct 343, LRA1917F 458; International Shoe Co. v. Washington (1945) 326 US 310, 90 L ed 95, 66 S Ct 154, 158, 161 ALR 1057; Darling & Co. v. Burchard (1939) 69 ND 212, 223, 284 NW 856; 42 Am Jur 7, Process § 4; 3 Am Jur Appearances, p 801 § 30; p 803 § 33.

In the case at bar, all of the requirements of procedural due process have been more than satisfied. Rev Code 1943, § 28-0617 makes a general appearance equivalent to personal service:

"A voluntary appearance of a defendant is equivalent to personal service of the summons upon him."

When the defendant interposed his Answer, he made a general appearance and thus conferred upon the court jurisdiction over his person from the date of the appearance. Hart v. Rigler (1940) 70 ND 407, 259 NW 308; McLean v. McLean, 69 ND 665, 290 NW 913. The withdrawal of the answer did not withdraw defendant's appearance. Eldred v. Michigan Ins. Bank, 17 Wall (US) 545, 21 L ed 685; 6 CJ p 70, § 28.

## V

### Length or Duration of Domicil

Thus far we have found the facts to be: that the District Court had acquired in personam jurisdiction over the defendant; that the plaintiff was domiciled within North Dakota at and prior to the time of the commencement of this action; and that the plaintiff did not procure her decree of divorce through fraud. However, the principal question remains: Did the District Court have jurisdiction to hear and determine the issue of fact as to the length or duration of plaintiff's domicil in North Dakota? In our opinion it did. The remainder of this decision will cite precedents and assign the rationale for this opinion.

In so far as it affects the marital status of the parties, a divorce action is quasi in rem, the res being the marriage status, the situs of which is established by domicil. Luick v. Arends (1911) 21 ND 614, 622, 623, 132 NW 353; Edwards v. McKechnie (1932) 62 ND 472, 478, 243 NW 923.

This legal fiction as to the situs of the marriage res is founded upon the legal principle that the state of domicil is most concerned with the family life of those whose home is in its territory. Beale: Conflict of Laws (1935) §§ 110.1, 113.3. Thus, judicial power to grant a divorce is founded on domicil. Williams II, 325 US 226, 89 L ed 1577, 65 S Ct 1092, 157 ALR 1366, supra. In Williams I, Mr. Justice Douglas explained why a divorce action is one quasi in rem, thus:

"Such a suit, however, is not a mere in personam action. Domicil of the plaintiff, immaterial to jurisdiction in a personal action, is recognized . . . as essential in order to give the court jurisdiction which will entitle the divorce decree to extra-territorial effect, at least when the defendant has neither been personally served nor entered an appearance. . . . Hence the decrees in this case like other divorce decrees are more than in personam judgments. They involve the marital status of the parties. Domicil creates a relationship to the state which is adequate for the numerous exercises of state power. . . . Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders." Williams v. North Carolina (1942) 317 US 287, 87 L ed 279, 63 S Ct 207, 213, 143 ALR 1273, 1279, 1280.

Inasmuch as the States are federated into a united nation, in a conflict of laws between two co-equal sovereign states, each of which has jurisdiction over the marriage status of one of its subject-citizens, there must be an arbiter. The U. S. Supreme Court, as the ultimate expounder of the Federal Constitution, acts as the final arbiter. Williams I; Beale, Conflict of Laws § 113.9. In such a conflict between states, that court is expounding the minimum requirements of the full faith and credit clause, it exercises an independent judgment as to what the common law is, and is not bound by the local law of either State. Hinderlider v. La Plata River & C. Creek Ditch Co. (1938) 304 US 92, 82 L ed 1202, 58 S Ct 803. Thus, the U. S. Supreme Court has ruled, in effect, that judicial power must be founded on domicil if a divorce decree is to be given extra-territorial recognition. Williams II.

Andrews v. Andrews, 188 US 14, 47 L ed 366, 23 S Ct 237, supra, made it clear that the requirement of domicil is a federal restriction upon the state courts, with respect to extra-territorial recognition of their divorce decrees.

"The Andrews Case made it clear, moreover, that this requirement of domicil is not merely a matter of state law. It was stated specifically that 'without reference to the statute of South Dakota and in any event' domicil in South Dakota

was necessary." Williams II, 325 US 226, 89 L ed 1577, 65 S Ct at 1100, 157 ALR 1366, per Murphy, J.

Except for such jurisdictional restrictions imposed upon the federated states under the U. S. Constitution, (Williams I), the federal courts have no jurisdiction over divorce litigation between State citizens. It is within the exclusive jurisdiction of the states to regulate and control marriage and divorce within their respective borders. Andrews v. Andrews (US) supra; Barber v. Barber (1859) 21 How (US) 582, 16 L ed 226. Each state has unquestioned authority, consistent with procedural due process (Beale: Conflict of Laws § 109.1) to grant divorces on whatever basis it sees fit to all who meet its statutory requirements. It is entitled, moreover, to give to its divorce decrees absolute and binding finality within the confines of its borders. Williams II, 325 US 226, 89 L ed 1577, 65 S Ct 1092 at p 1099, 157 ALR 1366, per Murphy, J.

There is a basic distinction between the jurisdiction which is dependent upon domicil and that which depends upon duration of domicil, where actual domicil exists. As stated by Professor Beale in the Conflict of Laws, § 110.5, the requirement of domicil for a certain period of time "goes to the jurisdiction of the court though not of the state." A state, having jurisdiction of the res by bare domicil, has the power to confer upon its courts by its constitution or legislation, as the case may be, the power to hear and determine all issues which might arise in an action concerning the subject matter.

The requirement of length or duration of domicil is no part of the Federal concept. Instead, such additional requirement has been superimposed upon the Federal concept of domicil by state legislation. Holt: Domicil in Divorce (1941) 39 Mich L Rev 689 at 695. Although domicil is a jurisdictional fact under the full faith and credit clause, the additional requirement of length or duration of residence is not jurisdictional unless the state of forum has made it so. Jacobs: Attack on Divorce Decrees (1936) 34 Mich L Rev 749, 753.

American Law Institute Restatement, Conflict of Laws (1934) § 110, Comment b, states the rule thus:

"The requirement that the residence must have continued for a certain number of months or years is not jurisdictional, in the sense in which that word is used in the Restatement of this Subject; and the finding of the court on the length of residence is conclusive in the courts of another state, provided the jurisdictional requirement of domicil at the time suit is brought is satisfied."

17 Am Jur 558 Divorce and Separation § 742, states the rule as follows:

"A frequent ground of attack in questioning jurisdiction is the residence of the plaintiff. The fact, however, that the plaintiff has not resided in the state as long as its law requires before commencing the action is an irregularity which does not go to the jurisdiction."

In Kern v. Field (1897) 68 Minn 317, 71 NW 393, 64 Am St Rep 479, wherein collateral attack upon a North Dakota judgment was denied, the Minnesota Supreme Court held at page 481:

"In Thurston v. Thurston, 58 Minn 279, 59 NW 1017, we held that, if the party is actually a resident of the sister state at the time he commences the action, though he has not resided in that state as long as its laws require before commencing the action, the judgment is valid, though irregular. The irregularity does not go to the jurisdiction."

California and Texas have construed their own statutory requirement of length or duration of domicil as not jurisdictional. De Young v. De Young (1946) 27 Cal 2d 521, 165 P2d 457, 459; Bullard v. Bullard, 189 Cal 502, 506, 209 P 361; Re McNeil (1909) 155 Cal 333, 341, 100 P 1086; Aucutt v. Aucutt (1933) 122 Tex 518, 62 SW2d 77, 89 ALR 1198, 1201; Therwhanger v. Therwhanger (1943; Tex Civ App) 175 SW2d 704, 705; Tucker v. State (1941) 141 Tex Crim 428, 148 SW2d 1111, 1114; Williams v. Williams (1941; Tex Civ App) 146 SW2d 1013, 1014.

Aucutt v. Aucutt, 122 Tex 518, 62 SW2d 77, at p 1201 of 89 ALR, supra, reads:

"Since district courts of this state are clothed by the Consti-

tution with divorce jurisdiction, it does not lie within the power of the Legislature to take such jurisdiction away from them. . . . Of course, the Legislature has power, within proper bounds, to prescribe rules of practice and procedure for the exercise of divorce jurisdiction by our district courts. . . . (With respect to the statute as to duration of residence) we hold that it is not a jurisdictional statute at all, but merely a statute prescribing the qualifications of the plaintiff in divorce cases."

In Re McNeil, 155 Cal 333, 100 P 1086, at page 1089, supra, the opinion reads:

"The superior court is by the Constitution given general jurisdiction of actions for divorce. Under this grant, when a complaint is filed asking for a divorce, the court at once acquires jurisdiction of the subject matter of the action, regardless of whether or not the complaint states facts warranting the granting of a divorce, and when it has obtained jurisdiction of the person of the defendant it has the power to hear and determine the cause. In so hearing and determining, it is proceeding in the exercise of its lawful jurisdiction, which involves the power to determine the sufficiency of the facts alleged as a ground for divorce. If it errs in its conclusion in this matter, it is simply error in the exercise of its jurisdiction, which can be corrected only in the way provided by law for a review of the action of the trial court, and which cannot be reached on collateral attack or even reviewed in any other action. . . . Section 128 of the Civil Code, relative to residence of the plaintiff, does not impose any limitation on the jurisdiction of the superior court in the matter of divorces, but simply prescribes certain facts as essential to the making out of a case warranting a divorce, and allegations in regard to residence stand upon the same footing as any other allegation of facts showing the right to a divorce. If they are defective in any respect, and the court nevertheless holds them to be sufficient, we have nothing more than error in the exercise of jurisdiction."

The respondent urges, however, that not only domicil but duration of domicil for the full period of twelve months is a

jurisdictional prerequisite in a divorce action under the statutes and decisions of this State; and that there is no limitation upon the time within which the validity of a divorce decree may be attacked upon the ground that the period of domicil was insufficient. In support of this contention he cites: Smith v. Smith, 7 ND 404, 75 NW 783; Graham v. Graham, 9 ND 88, 81 NW 44; Smith v. Smith, 10 ND 219, 86 NW 721. In these cases the court in discussing the question of domicil or residence of the plaintiff in an action for divorce in this state said that residence in the state for the time prescribed by the statute before commencing an action for divorce is jurisdictional. Specifically in the decision in Smith v. Smith, 10 ND 219, 86 NW 721, the court said:

"It is generally, if not universally, held by the courts of this country that residence in the state for the prescribed time before commencing an action for divorce is jurisdictional." (10 ND 220).

This language is subject to construction. Strictly speaking lack of jurisdiction means lack of judicial power to act in the premises, (21 CJS p 32), but the terms "want of jurisdiction", "lack of jurisdiction", and "without jurisdiction" have at times "been loosely used to convey the idea of error in rendering a decision." 21 CJS 32; Harrigan v. Gilchrist, 121 Wis 127, 228–232, 99 NW 909, 934. When there is said to be "want of jurisdiction" in this latter sense the idea intended to be conveyed is that it would be or was erroneous to exercise judicial power in the particular way or under the particular circumstances and that the exercise by the court of its powers in the particular manner or circumstances is an erroneous exercise of the court's power rendering the court's action subject to reversal when properly challenged in an appellate court but "binding till reversed and set aside in some proper way." Harrigan v. Gilchrist, 121 Wis at p 230, 99 NW at p 934.

Smith v. Smith, 10 ND 219, 86 NW 721, was brought before this court by appeal wherein a trial anew was demanded in this court. So in considering the rulings and the decision of the trial court on appeal, this court was concerned with the

correctness of the rulings and findings of the trial court, and the decision that ought to be rendered, and it is not unlikely that the court used the term "jurisdictional" in the sense that residence in the state for the prescribed time was an essential qualification on the part of the plaintiff in an action for divorce and that it would be erroneous, and an abuse of power, for the trial court to grant a divorce to a plaintiff domiciled in the state, but who had not been domiciled there for the prescribed period of time before the commencement of the action. In any event the expressions of the court upon the question of residence for the prescribed period of time before the commencement of an action for divorce in Smith v. Smith, 7 ND 404, 75 NW 783; Graham v. Graham, 9 ND 88, 81 NW 44; and Smith v. Smith, 10 ND 219, 86 NW 721, were clearly dicta. These cases were all brought before this court on appeal wherein a trial anew was demanded. After reviewing the evidence this court found in all three cases that neither of the parties in such actions was domiciled within the state at the time the action was commenced or the decree entered. The finding that neither party was or had been domiciled within the state was of course decisive of the action. It was therefore unnecessary to determine whether duration of domicil for the prescribed period was a jurisdictional requirement. Hence, the statements made with respect thereto were dicta and are not authority.

"The authority of a former decision as a precedent must be limited to the points actually decided on the facts before the court." 15 CJ 939; CJS Courts p 380, § 209.

" 'It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.' Cohen v. Virginia, 6 Wheat (US) 264, 399, 5 L ed 257, 290. 'It is a general rule,' said Chief Justice Marshal (Ogden v. Saunders, 12 Wheat (US) 333, 6 L ed 647) . . . 'that the positive authority of a decision is co-extensive

only with the facts on which it is made.'" Federal Farm Mortg. Corp. v. Falk, 67 ND 154, 171, 270 NW 885, 893, 113 ALR 724.

Does a court of competent jurisdiction have the power to adjudicate an issue as to the existence of a jurisdictional fact and does such an adjudication have the same validity and finality as the adjudication of any other issue that is litigated? The question of length or duration of domicil is obviously one of fact to be determined from the evidence. If it be regarded as a jurisdictional fact, then jurisdiction to grant a divorce depends on a fact that must be litigated in the action.

"Every court of general jurisdiction has power to determine whether the conditions essential to its exercise exist." Texas & P. R. Co. v. Gulf, C. & S. F. R. Co. (1925) 270 US 266, 70 L ed 578, 46 S Ct 263, per Mr. Justice Brandeis.

It is necessary that every court should so far entertain a case as to determine whether it has jurisdiction. To this extent it must adjudicate, and may determine its own jurisdiction and its decision thereon concludes the parties to the record. James River Nat. Bank v. Haas (1944) 73 ND 374, 380, 15 NW2d 442, 154 ALR 1005. This power is inherent in a court of general jurisdiction. Grignon v. Astor, 2 How (US) 319, 341, 11 L ed 283, 292.

In Sunshine Anthracite Coal Co. v. Adkins (1940) 310 US 381, 84 L ed 1263, 60 S Ct 907, Mr. Justice Douglas delivered the opinion which reads, in part:

"The suggestion that the doctrine of res judicata does not apply unless the court rendering the judgment had jurisdiction of the cause is sufficiently answered by Stoll v. Gottlieb, 305 US 165, 83 L ed 104, 59 S Ct 134, 38 Am Bankr NS 76, and Treinies v. Sunshine Min. Co. 308 US 66, 84 L ed 85, 60 S Ct 44. As held in those cases, in general the principles of res judicata apply to questions of jurisdiction as well as to other matters— whether it be jurisdiction of the subject matter or of the parties."

The doctrine of due process under the 14th Amendment does not involve the right to litigate the same question twice. Baldwin v. Iowa State Traveling Men's Asso. (1931) 283 US 522,

698

75 L ed 1244, 51 S Ct 517, revg (1930 CCA 8th Iowa), 40 F2d 357. See 30 Am Jur 914, Judgments, § 172.

In Treinies v. Sunshine Min. Co. 308 US 66, 84 L ed 85, 60 S Ct 44, 51, supra, Mr. Justice Reed concluded the opinion with these words:

"One trial of an issue is enough. (Citing Baldwin v. Traveling Men's Asso. (US) supra). 'The principles of res judicata apply to questions of jurisdiction as well as to other issues, as well to jurisdiction of the subject matter as of the parties.' "

The U. S. Supreme Court has also ruled that in divorce actions, in so far as the full faith and credit clause is concerned, a decision of a state court upon the issue of domicil is res judicata if such issue has been litigated in an actual contest. Davis v. Davis (1938) 305 US 32, 83 L ed 26, 59 S Ct 3, 118 ALR 1518.

In the second Williams Case, 325 US 226, 89 L ed 1577, 65 S Ct 1092, 1095, 157 ALR 1366, it was said:

"It is one thing to reopen an issue that has been settled after appropriate opportunity to present their contentions has been afforded to all who had an interest in its adjudication. This applies also to jurisdictional questions. After a contest these cannot be relitigated as between the parties. Forsyth v. Hammand, 166 US 506, 517, 41 L ed 1095, 1099, 17 S Ct 665, 670; Chicago L. Ins. Co. v. Cherry, 244 US 25, 30, 61 L ed 966, 969, 37 S Ct 492, 493; Davis v. Davis, 305 US 32, 83 L ed 26, 59 S Ct 3, 118 ALR 1518, supra."

What is "jurisdiction" in the strict sense of that term? By jurisdiction is meant authority which a court has to decide matters that are litigated before it or to take cognizance of matters presented in a formal way for its decision. Jurisdiction is the power to hear and determine a cause of action. It does not depend upon the correctness of the decision made. A court which has jurisdiction over a cause, and the parties thereto, does not lose jurisdiction because it makes a mistake in determining either the facts or law or both. Rasmusson v. Schmalenberger (1931) 60 ND 527, 534, 235 NW 496; Ryan v. Nygaard (1941) 70 ND 687, 695, 297 NW 694. Jurisdiction relates to the power of the tribunal, and not the rights of the parties.

The test of the jurisdiction of a court is whether or not it had power to enter upon the inquiry; not whether its conclusion in the course of it was right or wrong. If a court acts in the exercise of its lawful jurisdiction, and not in excess of such jurisdiction, the mere fact that its conclusion is wrong does not make its action an excess of jurisdiction. Baker v. Lenhart (1922) 50 ND 30, 35, 195 NW 16; State ex rel Dreyer v. Brekke (1947) ante 468, 28 NW2d 598, 600, 604 and 605. To obtain jurisdiction of a cause, three things are essential: (a) jurisdiction of the subject matter; (b) jurisdiction of the person; and (c) the power and authority to render the particular judgment. Taylor v. Oulie (1927) 55 ND 253, 258, 212 NW 931. "Jurisdiction of the subject-matter" is the power of a court to hear and determine cases of the general class to which the action in question belongs. It is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. Bryan v. Miller (1944) 73 ND 487, 499, 16 NW2d 275; Christenson v. Grandy (1920) 46 ND 418, 427, 180 NW 18.

What is the *source* of the District Court's jurisdiction over the subject-matter? The State Constitution, § 103; Bryan v. Miller (ND) supra.

"The constitution is the ultimate source of the judicial power of courts." 21 CJS Courts, § 120.

What are the *limits* of such jurisdiction? The limits of this authority are imposed by the Constitution, and especially § 103 thereof, under which the District Court is constituted, and such jurisdiction may be extended or restricted by the like means. With respect to the subject-matter over which the Constitution has conferred original jurisdiction upon it, the District Court has unlimited jurisdiction to hear and determine all issues of fact and law, inasmuch as no restriction or limit is imposed by the Constitution upon such jurisdiction. Bryan v. Miller. In Rasmusson v. Schmalenberger, supra, at pages 533 and 534 of 60 ND, 235 NW 496, the opinion reads:

"The district court is a court of general jurisdiction. It has

'original jurisdiction, except as otherwise provided in the Constitution, of all causes both at law and equity.' ND Const § 103, Hence, it has power to determine all controversies or questions of difference which can possibly be made the subject of civil action. Trott v. State, 41 ND 614, 618, 171 NW 827, 4 ALR 1372."

Does the Constitution grant to and confer upon the District Court unlimited jurisdiction over causes of action for divorce? Yes, § 103 has, in effect, granted and conferred exclusive, original and unlimited jurisdiction upon such court in divorce actions.

But the respondent calls attention to the following statement in Leifert v. Wolfer (1946) 74 ND 746, 752, 24 NW2d 690, 169 ALR 633.

"In State ex rel. Hagert v. Templeton, 18 ND 525, 123 NW 283, 25 LRA NS 234, we show that, 'Jurisdiction in matters relating to divorce and alimony is conferred by statute, and the power of the courts to deal with such matters must find support in the statute, or it does not exist.' "

However, an examination of these two cases will disclose that this court was using "jurisdiction" in the loose sense, rather than in the strict sense. The origin of judicial divorce is purely statutory. The courts in this state have no common law jurisdiction over the subject of divorce. The North Dakota Constitution, § 69, expressly prohibits the legislature from granting divorces.

Our legislature has expressly authorized the granting of judicial divorces in such statutes as Rev Code 1943, §§ 14–0501 and 14–0503, which read as follows:

"14–0501. Marriage is dissolved only:

1. By the death of one of the parties; or

2. By a judgment of a court of competent jurisdiction decreeing a divorce of the parties."

With respect to the causes for which a court of competent jurisdiction can grant a divorce 14–0503 reads in part:

"Causes for Divorce. Divorces may be granted for any of the following causes:

1. Adultery;
2. Extreme cruelty;
3. Willful desertion;
4. Willful neglect;
5. Habitual intemperance;
6. Conviction of felony; or
7. Insanity for a period of five years . . . ."

Thus, the legislature has created the general subject matter for judicial divorce, and in this sense it is correct to say that jurisdiction in matters relating to divorce is wholly statutory. It is obvious that, with relation to the statutory causes for divorce, such reference to "jurisdiction" has reference only to the "granting" of divorces, and not to the matter of the jurisdiction of the District Courts to "hear and determine" such causes of action. When the court has determined that there are sufficient facts to constitute a cause of action for divorce, then it has "jurisdiction" to grant a divorce.

It is confusing and misleading that the word jurisdiction has been used in saying that jurisdiction in matters relating to divorce is conferred by *statute,* inasmuch as such word may be incorrectly interpreted as meaning that the power of the court to "hear and determine" the issues is conferred by statute. Actually jurisdiction to hear and determine is conferred by the constitution. Likewise it is confusing and misleading to use "jurisdictional" in describing the nature of the statutory requirement of length or duration of domicil, for here too the jurisdiction to hear and determine is conferred by the constitution.

Giving a literal interpretation to the words of the statute, 14–0517, we find nothing therein evidencing an intent to limit or restrict the jurisdiction of the district court to "hear and determine" a cause of action for divorce.

"14–0517. Residence Requirements. A divorce must not be *granted* unless the plaintiff in good faith has been a resident of the state for twelve months next preceding the commencement of the action."

The statute merely purports to limit the authority of the

court to "grant" a divorce unless the qualifications specified therein are satisfied. It is merely a statute prescribing qualifications which the plaintiff must possess before the court can grant a divorce. The district court has the jurisdiction to adjudicate issues of fact as to the plaintiff's residential qualifications, the same as it has jurisdiction to adjudicate the issues of fact as to a cause of action for divorce.

The foregoing interpretation of the statute is in harmony with ND Const § 103, which reads as follows:

"Section 103. *The district courts shall have original jurisdiction, except as otherwise provided in this constitution,* of all causes both at law and equity, and such appellate jurisdiction as may be conferred by law. They and the judges thereof shall also have jurisdiction and power to issue writs of habeas corpus, quo warranto, certiorari, injunction and other original and remedial writs, with authority to hear and determine the same."

Construing § 103 of the constitution, Bryan v. Miller, supra, at page 496 of 73 ND 16 NW2d 275, reads:

"*This constitutional provision confers upon district courts* two distinct classes of jurisdictions: 1. *Original jurisdiction, which is subject only to such limitations as are prescribed by the constitution itself;* and, 2. Appellate jurisdiction, which is subject to such limitations as may be prescribed by law. Under the first grant of power, 'The district court is a court of general jurisdiction' and 'has power to determine all controversies or questions of difference which can possibly be made the subject of civil action.' Trott v. State, 41 ND 614, 618, 171 NW 827, 4 ALR 1372; Lobe v. Bartaschawich, 37 ND 572, 164 NW 276; Brissman v. Thistlethwaite, 49 ND 417, 192 NW 85; Rasmusson v. Schmalenberger, 60 ND 527, 533, 534, 235 NW 496, 499."

As we have previously shown the Texas and California cases of Aucutt v. Aucutt and Re McNeil, respectively, hold that the residence requirement statute, with respect to length or duration of domicil, does not impose any limitation or restriction upon the jurisdiction of the district court to hear and determine a divorce action.

Accordingly, even though the trial court erred in its finding of fact to the effect that the plaintiff had been domiciled in this state "for twelve months next preceding the commencement of the action," which qualification is required of the plaintiff by 14-0517 as a prerequisite to "granting" a divorce, such an error is not an act in excess of jurisdiction, but merely an error in the exercise of jurisdiction. Therefore, the trial court had jurisdiction to grant the divorce. If there was error, motion to vacate the judgment was not the proper remedy for reviewing it. Wiemer v. Wiemer, 21 ND 371, 130 NW 1015. The time for appeal from that judgment has expired. It cannot now be attacked because of error. The Order appealed from is therefore reversed.

CHRISTIANSON, Ch. J., BURKE and NUESSLE, JJ., concur.

BURR and MORRIS, JJ., did not participate.