**MEDICAL ARTS BUILDING LIMITED,**
Plaintiff and Appellee,

v.

Muammer Suha ERALP, Defendant
and Appellant.

Civ. No. 9718.

Supreme Court of North Dakota.

March 13, 1980.

DePuy, Kopperud, Goulet & Hall, Grafton, for defendant and appellant; argued by W. R. Goulet, Jr., Grafton.

Ringsak, Webb, Rice & Metelmann, Grafton, for plaintiff and appellee; argued by Thomas K. Metelmann, Grafton.

SAND, Justice.

The County Court of Winnipeg, Manitoba, Canada, issued a judgment on 2 May 1978 in favor of Medical Arts Building Limited, and against Muammer Suha Eralp for unpaid rent due and owing for the period 1 Mar. 1976 to 1 Jan. 1978 in the amount of $5,317.21 (Canadian dollars), which has not been satisfied.

Medical Arts Building Limited brought an action on this judgment in the district court of Walsh County, State of North Dakota, against Muammer Suha Eralp, defendant, who had moved to Grafton, North Dakota, at the time. The defendant Eralp answered the complaint, alleging generally that the North Dakota court has neither jurisdiction of the subject matter nor of the defendant and that any judgment entered by the Canadian court was against public policy of the United States and of the State of North Dakota. Neither party appeared personally nor introduced any evidence other than parts of the Canadian record of this case and presented arguments through their respective counsel. A certificate of

the Canadian judgment and the memorandum opinion issued by the Canadian court were received as part of the record in this case. The Canadian memorandum opinion discloses that the defendant appeared personally and contested that action, and the court, in awarding the judgment to the plaintiff, dismissed the counterclaim asserted by the defendant. The North Dakota court filed its memorandum opinion which also served as findings of fact, conclusions of law, and order for judgment. A judgment was issued and entered in favor of Medical Arts Building and against Muammer Suha Eralp in the amount of $5,321.72 (in United States dollars in absence of any other description), plus interest at the rate of 6% simple interest, together with costs and disbursements, from which the defendant Eralp appealed.

The defendant Eralp contended basically that no law has any force outside the limits of the sovereignty from which its authority is derived and has no effect outside of the country in which it was rendered except upon comity. Eralp also asserted and argued that the Walsh County district court treated and considered the Canadian judgment as conclusive, contrary to law, and that the judgment was against public policy, both federal and state.

The United States Supreme Court, in *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), after discussing numerous legal concepts which may play a role in how judgments of foreign countries should be treated, concluded that comity was an important, if not the overriding, factor and said:

"'Comity,' in the legal sense, is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard to both international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." 159 U.S. at 164, 16 S.Ct. at 143, 40 L.Ed. at 108.

"Comity" is defined in Black's Law Dictionary (Rev. 4th Ed. 1968), as:

"That body of rules which states observe towards one another from courtesy or mutual convenience, although they do not form part of international law.

". . . a willingness to grant a privilege, not as a matter of right, but out of deference and good will. *Dow v. Lillie,* 26 N.D. 512, 144 N.W. 1082 (1914)."

■ Eralp, relying upon *Hilton,* argued and contended that mutuality (reciprocity), which is lacking in this case, is an integral part of comity and is also a prerequisite to the enforcement of foreign judgments. We do not agree. He obviously misread and misinterpreted *Hilton,* which stated:

"The reasonable, if not the necessary, conclusion appears to us to be that judgments rendered in France, or in any other foreign country by the laws of which our own judgments are reviewable upon the merits, are not entitled to full credit and conclusive effect when sued upon in this country, but are <u>prima facie evidence only</u> of the justice of the plaintiff's claim." [Underscoring ours.] 159 U.S. 227, 16 S.Ct. 168, 40 L.Ed. 130.

Justice Gray continued:

". . . at the time of the adoption of the Constitution, a foreign judgment was considered as prima facie evidence, and not conclusive." 159 U.S. 228, 16 S.Ct. 168, 40 L.Ed. 130.

■ The court in effect said that even though we do not give conclusive effect to foreign judgment of other countries, we do give them the standing of prima facie evidence, which we believe is the proper approach.

In the case of *Toronto-Dominion Bank v. Hall,* 367 F.Supp. 1009 (1973), an action was brought against a citizen of Arkansas in Ontario, Canada, and a judgment was rendered against the citizens of Arkansas. In an action brought in United States District Court in Arkansas to enforce the judgment against the citizen of Arkansas, the federal court determined that the Supreme Court of Arkansas would not impose reciprocity as

a condition to giving conclusive effect to a foreign judgment assuming the judgment from a foreign country met the other criteria that has been mentioned and held that the enforceability of a judgment was governed by the law of Arkansas rather than "federal common law" and that reciprocity would not be imposed as a condition to giving conclusive effect to the foreign judgment, and that enforcement of the judgment would not affect any strong public policy of Arkansas even if a holder of notes was given broader powers in dealing with the security than would be permitted in Arkansas.

In *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the United States Supreme Court said:

"Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or 'general,' be they commercial or a part of the law of torts." 304 U.S. 78, 58 S.Ct. 822, 82 L.Ed. 1194.

In *Somportex Limited v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435 (1971), *cert. denied* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972), the Circuit Court of Appeals, Third Circuit, noted that judgments obtained in the courts of sister states are entitled to full faith and credit but those of foreign courts are subject to principles of comity, and that comity is the recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. The court went on to say that comity, although more than mere courtesy and accommodation, does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Also, that comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of a nation called upon to give it effect. The main question was whether or not a default judgment obtained in England against Philadelphia Chewing Gum Corp. would be recognized and to what extent. The court, after some discussion, concluded that it would not disturb the English court's adjudication and

"That [merely because] the English judgment was obtained by appellant's default instead of through an adversary proceeding does not dilute its efficacy. In the absence of fraud or collusion, a default judgment is as conclusive an adjudication between the parties as when rendered after answer and complete contest in the open courtroom. [Citations omitted.] The polestar is whether a reasonable method of notification is employed and reasonable opportunity to be heard is afforded to the person affected." 453 F.2d 442.

In *Johnston v. Compagnie Generale Transatlantique,* 242 N.Y. 381, 152 N.E. 121 (1926), the New York Court of Appeals said that New York was not bound by decisions of the Supreme Court of the United States as to the effect to be given a judgment of a court of France and enforcement of private rights acquired thereunder. The New York court in effect said that it is the persuasiveness of the foreign judgment which determines the effect to be given the judgment.

In *Nicol v. Tanner,* 256 N.W.2d 796 (Minn.1976), the Minnesota court had under consideration a German default judgment establishing paternity and child support against a United States citizen. The court first decided that reciprocity is not a prerequisite in obtaining enforcement of a foreign judgment. However, as to a default judgment the court adopted the view of *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), that the court in enforcing a foreign judgment should take into consideration whether or not

" . . . there has been an opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment. * * *." 256 N.W.2d 802.

The case was remanded to the trial court to determine whether or not the default judgment meets the standards set out above by the Minnesota Supreme Court.

■ *Somportex Limited, supra,* also quoted with approval from *Hilton v. Guyot,* 159 U.S. 205, 16 S.Ct. 159, 40 L.Ed. 123, as follows:

"When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens . . . and the foreign judgment appears to have been rendered by a competent court having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect."

We believe the foregoing to be a reasonable approach to the subject matter. However, when the government is an interested party another concept comes into focus.

In the case of *Her Majesty the Queen In Right of the Province of British Columbia v. Gilbertson,* 597 F.2d 1161 (9th Cir. 1979), involving a judgment for taxes in favor of Canada and against a United States citizen, the court said that, generally, judgments from a foreign country are recognized by the courts of this country when the general principles of comity are satisfied. However, courts of the United States would not enforce judgments rendered for taxes by courts of a foreign government. The courts recognize the distinction or difference between private litigants resorting to the courts of the countries to enforce their private rights and the government of one country seeking to enforce the collection of its taxes or other similar assessments against a private citizen.

Regarding a judgment being prima facie evidence, we think it will be helpful to better understand its effect if we examine the meaning of the term.

The term "prima facie evidence" has been defined in 29 Am.Jur.2d *Evidence* § 4, page 38, as follows:

"The term 'prima facie evidence,' which frequently appears in cases, denotes evidence which, if unexplained or uncontradicted, is sufficient in a jury case to carry the case to the jury and to sustain a verdict in favor of the issue which it supports, but which may be contradicted by other evidence. . . . A prima facie evidence rule is nothing more or less than a rule of evidence, and it is not a rule of substantive law; it has reference and applies only to the mode or manner by and through which facts essential to a judgment or conviction might be established."

Volume 32A C.J.S. *Evidence* § 1016, page 624, defines "prima facie evidence" as evidence

" . . . that which, either alone or aided by other facts presumed from those established by the evidence, shows the existence of the fact which it is adduced to prove, unless overcome by counter evidence; it is evidence which, unexplained or uncontradicted, is sufficient to maintain the proposition affirmed."

The North Dakota Supreme Court in *Schnoor v. Meinecke,* 77 N.D. 96, 40 N.W.2d 803 (1950), defined "prima facie evidence" to mean "sufficient evidence upon which a party would be entitled to recover, providing his opponent produced no further testimony." *Peters v. Lohr,* 24 S.D. 605, 124 N.W. 853, 855. It also stated that this Court, in *State v. Momberg and Bauer,* 14 N.D. 291, 103 N.W. 566 (1905), held:

" . . . that by prima facie evidence is meant competent evidence, and evidence which is legally sufficient to justify the jury in finding the fact of unlawful sales, provided it satisfies them beyond a reasonable doubt, but not otherwise. It is not conclusive, and to so instruct is error." 40 N.W.2d 808.

The statement was made with reference to a criminal case.

■ The words "final" and "conclusive" when used in connection with judgment or order imply finality, termination, or end of matter decided, save for appellate review, and mean that the matter decided is irrefutable and admits of no explanation of contradiction. *In re Enger's Will,* 225 Minn. 229, 30 N.W.2d 694, 700, 1 A.L.R.2d 1948 (1948). See Words and Phrases, Vol. 8, for further judicial definitions of the term "conclusive."

■ In the final analysis, we find little or no difference between a judgment which is prima facie evidence and has not been overcome by counter evidence and a judgment which is conclusive. We believe Judge Heen had this in mind when he determined the judgment in question was conclusive after observing that no evidence was introduced except the certificate and the Canadian memorandum opinion.

■ Chapter 28–20.1, NDCC, governs the enforcement of foreign judgment. However, § 28–20.1–01 defines a foreign judgment to mean "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." This language refers to Article IV § 1 of the United States Constitution, which provides as follows:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

From this we necessarily conclude that judgments of foreign countries are not included in Ch. 28–20.1, NDCC. *Lohnes v. Cloud,* 254 N.W.2d 430 (N.D.1977).

We are not aware of any other provision of law which pertains to foreign judgments or to judgments of foreign countries, and, for that matter, none has been called to our attention.

Section 10 of Article I of the United States Constitution, in part, provides that:

"No State shall enter into any Treaty, Alliance, or Confederation; . . .

. . . . .

"No State shall, without the Consent of Congress . . . enter into any Agreement or Compact with another State, or with a foreign Power, or engage in War, unless actually invaded, or in such imminent Danger as will not admit of delay."

Regarding reciprocity or mutuality requirement, as contended by Eralp, it is difficult to understand just how a state could meaningfully enter into an agreement with a foreign country in view of § 10 Article I of the United States Constitution. We believe this is a cogent reason why comity does not rest upon mutuality or reciprocity as has been illustrated in the Court's opinion earlier herein.

■ Judge Heen's memorandum opinion, dated 14 Sept. 1979, stated that it appears in this case that the Canadian court had jurisdiction of the subject matter and of the parties and that the defendant in this case appeared personally and that the other requirements of the standards of *Hilton v. Guyot, supra,* were met by Canadian law and procedure. Accordingly, the Canadian judgment at this point was prima facie evidence supporting the plaintiff's cause in

this court. The memorandum opinion continued by stating that, there being no showing here of fraud or collusion, the Canadian judgment is held by this court to be conclusive of the issues of this case and that the judgment is not against public policy of the United States or of the State of North Dakota. Before reaching this conclusion, the memorandum opinion took into account that the parties appeared by counsel, but not personally, at the trial in Canada. From the record we also note that no evidence was introduced except of the Canadian judgment and the memorandum opinion of the Canadian court.

■ With reference to Eralp's contention that the foreign judgment is against state and public policy, we construe his argument to mean that the basic lease upon which the judgment was obtained in Canada did not comply with the North Dakota statute of frauds. Initially, we observe that the law of the Canadian Province controls, rather than the law of North Dakota. Furthermore, Eralp did not state or explain what the Canadian law is on that topic. In addition, the Canadian memorandum opinion contains statements of evidence from which it can be inferred that the statute of frauds (North Dakota) was satisfied. Finally, a mere statement without any supporting authority or persuasive argument, which is the case here, will not be formally considered.

There is one further matter to be considered.

■ The North Dakota judgment is in United States dollars. The Canadian judgment is in Canadian dollars. The rate of exchange seems to fluctuate to the extent that there could be substantial difference between the monetary value or exchange rate on each. To reduce this variance or difference, the North Dakota judgment should be modified or amended to reflect the amount due expressed in Canadian dollars. The court is so directed.

· The judgment of the district court of Walsh County, after having been modified or amended accordingly, is in all things affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.