Dale ZIMPRICH, Plaintiff
and Appellee,

v.

NORTH DAKOTA HARVESTORE SYS-
TEMS, INC. and A.O. Smith
Harvestore Products, Inc., Defendants,

and

AgriStor Credit Corporation, a Delaware
corporation, Defendant and Appellant.

Civ. No. 890374.

Supreme Court of North Dakota.

Oct. 2, 1990.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellee; argued by Armond G. Erickson. Appearance by LaDonne R. Vik.

Conmy, Feste, Bossart, Hubbard & Corwin, Ltd., Fargo, for defendant and appellant; argued by Wickham Corwin.

VANDE WALLE, Justice.

AgriStor Credit Corporation (AgriStor) has appealed from a district court judgment entered upon a jury verdict in favor of Dale Zimprich and from an order deny-

ing AgriStor's motion for judgment notwithstanding the verdict or a new trial. We affirm.

In August 1980, North Dakota Harvestore Systems, Inc. (Harvestore), sold Zimprich a feed-storage system manufactured by A.O. Smith Harvestore Products, Inc. (Smith). AgriStor later financed the unpaid balance due under the retail installment contract. Zimprich became dissatisfied with the feed-storage system, stopped making payments to AgriStor, and sued Harvestore and Smith for negligence and breach of warranty.

Harvestore repossessed the feed-storage system on July 26, 1984, at AgriStor's request. Zimprich filed an amended complaint adding AgriStor as a defendant and alleging conversion of the feed-storage system by Smith, Harvestore, and AgriStor.

The parties stipulated to the dismissal of Smith. Zimprich negotiated a settlement of his claims against Harvestore. AgriStor sought dismissal of Zimprich's action against it, arguing that Zimprich's action against AgriStor was based solely on a claim of vicarious liability under the doctrine of respondeat superior and that the release of Harvestore resulted in the release of AgriStor. The trial court agreed with AgriStor and dismissed Zimprich's action against AgriStor. On appeal, we held that "Zimprich's release of Harvestore from liability does not release AgriStor from any claim Zimprich might have against it which is based upon AgriStor's own wrongful conduct independent of any theory of vicarious liability." *Zimprich v. North Dakota Harvestore Systems, Inc.*, 419 N.W.2d 912, 913 (N.D.1988). We remanded for trial on the merits of Zimprich's direct liability claims in accordance with Restatement (Second) of Torts § 877, which provides:

"§ 877. Directing or Permitting Conduct of Another

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

"(a) orders or induces the conduct, if he knows or should know of circumstances that would make the conduct tortious if it were his own, ..."

At trial, it was undisputed that AgriStor had a security interest in Zimprich's feed-storage system. It was also undisputed that Zimprich was in default when Harvestore repossessed the feed-storage system at AgriStor's request.

Zimprich contended that, pursuant to § 41–09–49, N.D.C.C.,[1] he and AgriStor "otherwise agreed" to defer repossession of the feed-storage system. Zimprich contended that AgriStor agreed to waive the deficiency resulting from his default in payment and to defer repossessing the system until tests or inspections of the system were completed or he no longer needed it for evidence in his litigation with Harvestore and Smith. AgriStor conceded that it agreed to release Zimprich from responsibility for the deficiency and that it agreed to defer repossession. AgriStor contended, however, "that the actual agreement reached contemplated only a single testing after which AgriStor would proceed with the repossession." The feed storage structure was pressure-tested for leaks on July 25, 1984, and AgriStor argued that repossession on July 26, 1984, complied with its agreement to defer repossession. Zimprich contended that all the tests or inspections had not been completed, that he still needed the structure for evidence, and that the repossession constituted conversion.

The jury found that AgriStor wrongfully converted Zimprich's property, resulting in damages of $14,513.60. The jury also awarded $20,000 in exemplary damages to Zimprich. After the trial court denied AgriStor's motion for judgment notwithstanding the verdict or a new trial, AgriStor appealed, raising the following argumentative issues:

1. Section 41–09–49, N.D.C.C. [U.C.C. 9–503], provides in part: "Unless otherwise agreed ..., a secured party has, on default, the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

"1. Can the verdict be supported in light of the plaintiff's failure to prove, or indeed even pursue, the theories of direct liability remanded for trial?

"2. In order to maintain an action for conversion, plaintiff must show he had an interest in the property converted and the right to its possession at the time of the alleged conversion. As the debtor has forfeited his right to continued possession of that property, can the repossession of collateral by a secured party following default constitute conversion?

"3. Is an agreement by the secured party to defer the exercise of its repossessory rights enforceable when not supported by new consideration from the debtor?

"4. Can defendant be held to undertakings it did not agree to?

"5. When the debtor has no equity in the collateral that has been repossessed, can he claim to have sustained compensable damage as a result of its loss?

"6. Should the compensation plaintiff has already received act as a setoff against defendants [sic] liability?

"7. Are punitive damages recoverable for breach of contract, not accompanied by malice, fraud or oppression?

"8. Did the trial court err by precluding evidence as to the amount of the compensation plaintiff has already received from the actively culpable party?

"9. Did the trial court err by instructing on principles of agency, thereby reinjecting a claim released by plaintiff's settlement with defendant's purported agent?"

## 1.

AgriStor alleges that Zimprich failed to prove direct liability on the part of AgriStor, asserting that "[d]espite the nature of the theory remanded for trial, Zimprich's evidence at trial concentrated on the role played by N.D. Harvestore and ignored the need to attribute knowledge of any resulting wrong to AgriStor."

"Conversion is the wrongful exercise of dominion over the personal property of another in a manner inconsistent with, or in defiance of, the owner's right." *Union State Bank v. Woell*, 434 N.W.2d 712, 720 (N.D.1989). " '[T]he gist of a conversion is ... the wrongful deprivation of a person of property he is entitled to possess.' " *John Deere Co. v. Nygard Equipment, Inc.*, 225 N.W.2d 80, 89 (N.D.1974), [quoting 18 Am. Jur.2d *Conversion* § 25 (1965) ]. "Repossessing property under Section 41–09–49, N.D.C.C., if attempted under inappropriate circumstances, may subject the secured party to liability for wrongful conversion and detention of the property." *Zimprich v. North Dakota Harvestore Systems, Inc., supra*, 419 N.W.2d at 914.

 As it is noted in comment *a.* to Restatement (Second) of Torts § 877(a), "[i]n many of the situations that would come within the rule stated in this Clause, the person giving the order or inducement would be liable on the ground that he was principal or master." Thus, evidence bearing upon respondeat superior liability will often, as in this case, bear upon direct liability as well. On appeal, we view the evidence in the light most favorable to a jury verdict and we are bound by a verdict that is supported by substantial evidence. *Olmstead v. First Interstate Bank of Fargo, N.A.*, 449 N.W.2d 804 (N.D.1989). In our view, there was substantial evidence from which the jury could infer that AgriStor knew or should have known that Zimprich wished to have additional tests or inspections of the feed-storage system and still needed it for evidence when it was repossessed the day after it was pressure-tested.[2] Thus, there was substantial evi-

---

**2.** Included in the evidence bearing on this issue were such things as the following: (1) a letter from Zimprich's attorney to Mr. Anselment of AgriStor stating: "We have done some work as to making available the possible inspections;" (2) Zimprich's testimony that "[i]t was agreed that we wanted to keep it for testing, and we wanted to have it—I needed it for the evidence,

for the testing, to prove what I said had happened," and that he had talked to Mr. Kobilan of AgriStor about the conditions upon which AgriStor could take down the feed-storage system:

"Well, I told him that I had to have it for evidence, and he realized that it had to be tested, so we agreed that we would have to

dence from which the jury could have inferred that AgriStor knew or should have known of circumstances that made Harvestore's repossession of the feed-storage system at AgriStor's direction a tortious conversion of the property, rendering AgriStor liable under Restatement (Second) of Torts § 877 for harm resulting to Zimprich.

### 2.

■ AgriStor contends that, because he was in default, Zimprich forfeited his right to continued possession of the feed-storage system, the right to possession passed to AgriStor, and Zimprich could not maintain a conversion action because a secured creditor's repossession of collateral upon default cannot constitute a conversion. A plaintiff in a conversion action "must show that he has either a general or special property interest in the thing converted and the right to its possession *at the time of the alleged conversion.*" *Napoleon Livestock Auction, Inc. v. Rohrich,* 406 N.W.2d 346, 352–353 (N.D.1987). Although it was disputed, there was evidence from which the jury could infer that Zimprich had a property interest in the feed-storage system and a right to its possession despite his default because he and AgriStor had "otherwise agreed" under § 41–09–49, N.D.C.C., to defer AgriStor's right to repossess the property until Zimprich had completed his testing of the property or he no longer needed it for evidence. As we said in *Zimprich v. North Dakota Harvestore Systems, Inc., supra,* 419 N.W.2d at 914: "Repossessing property under Section 41–09–49, N.D.C.C., if attempted under inappropriate circumstances, may subject the secured party to liability for wrongful conversion and detention of the property." In light of the evidence of AgriStor's agreement to defer repossession, the jury could have inferred that AgriStor directed repossession of the property "under inappropriate circumstances."

### 3.

■ AgriStor contends that any agreement it made to defer exercising its right to repossess the property was unenforceable because it was not supported by new consideration. Even if AgriStor's agreement to defer repossession required new consideration, which we need not decide, we believe that there was consideration.

Under § 9–05–01, N.D.C.C., "Any benefit conferred or agreed to be conferred ... or any prejudice suffered or agreed to be suffered ... is a good consideration for a promise." In exchange for canceling Zimprich's debt and allowing the system to remain in place until it was no longer needed for tests, inspections, or evidence, AgriStor was able to resolve the matter of repossession without litigation—a benefit to AgriStor. As Kenneth Anselment, senior counsel for AgriStor, recognized: "Litigation is expensive, it's time-consuming, it doesn't work to anybody's benefit in the long run." Zimprich suffered a detriment by giving up his right to test AgriStor's repossessory rights in court. "Refraining from doing something which one has a legal right to do constitutes good consideration." *Farmers Union Oil Co. v. Maixner,* 376 N.W.2d 43, 46 (N.D.1985). "A legal detriment may be sustained by a promisee by the surrender of a legal right, whether such right has substantial value or not." *Mitchell v. Barnes,* 354 N.W.2d 680, 683 (N.D.1984) [quoting *Keen v. Larson,* 132 N.W.2d 350, 357 (N.D.1964) ]. AgriStor's agreement to defer repossession was supported by consideration.

### 4. and 5.

■ AgriStor alleges that the deferral agreement was not breached because "the

---

have it for that. And I also said, before I could sign this, I would want to have my debt against me forgiven;"
(3) Mr. Kobilan of AgriStor testified:
"A I said that we would postpone the teardown until the checks could be made.
"Q Until what?
"A Until the pressure checks could be made.

"Q Tests were plural, weren't they?
"A Yes, sir;"
and (4) Mr. Anselment of AgriStor testified that when he received the Zimprich file from Kobilan, there were indications in the file that Zimprich "wouldn't let it go because they need it for trial evidence."

actual agreement reached contemplated only a single testing after which AgriStor would proceed with the repossession" and that "[s]ince Zimprich had no equity in the collateral that was repossessed, he cannot claim to have sustained compensable damage as a result of its loss." Viewed in the light most favorable to the verdict, there is substantial evidence from which the jury could infer that the agreement contemplated the possibility of more than "a single testing" and that Zimprich had some equity in the feed-storage system.

6.

■ Relying only upon Restatement (Second) of Torts § 885(3), AgriStor contends that it is entitled to a set-off in the amount of Zimprich's settlement with Harvestore. Restatement (Second) of Torts § 885(3) provides:

"(3) A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment."

Zimprich asserts: "The damages that Zimprich recovered in the settlement of his case with North Dakota Harvestore were damages resulting from his products liability case. The case before this court is one for conversion. The damages are separate and distinct."

Zimprich originally sued Harvestore and Smith for breach of warranty and sought damages for such things as payments made on the defective feed-storage system, loss of grain due to spoilage, loss of milk and other damages. After the feed-storage system was repossessed on July 26, 1984, Zimprich amended his complaint by adding AgriStor as a party and alleging trespass and conversion against Harvestore, Smith, and AgriStor. There were separate claims against the defendants for separate types of harm flowing from the defective feed-storage system and from its repossession. We are not persuaded that AgriStor has demonstrated that it is entitled to a set-off against its liability for conversion in the amount of Zimprich's settlement with Harvestore under the terms of Restatement (Second) of Torts § 885(3).

7.

■ AgriStor contends that the punitive-damage award cannot be sustained because punitive damages are not recoverable for breach of contract and there was no evidence of oppression, fraud, or malice. Section 32–03–07, N.D.C.C., provides in part:

"In any action for the breach of an obligation not arising from contract, when the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the court or jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."

Exemplary damages are recoverable under § 32–03–07, N.D.C.C., in conversion actions. *John Deere Co. v. Nygard Equipment, Inc., supra. Nygard* involved the termination of a dealership agreement and repossession of goods in which John Deere had a security interest. John Deere argued that the issue of punitive damages should not have been submitted to the jury because punitive damages are not available in contract actions. This court said:

"This was not a contract action. Nygard's claim was not for breach of contract, but for conversion (Deere's wrongful seizure and sale of property belonging to Nygard). Since this was not a contract action, punitive damages were not precluded by statutory provisions or judicial decisions holding that punitive damages are not available in contract actions."

*Id.*, 225 N.W.2d at 94. AgriStor argues that *Nygard* is distinguishable on the grounds that in that case, "it was established that the debtor was not in default at the time the collateral was repossessed" and because "the evidence was sufficient to support a finding of fraud, malice and/or oppression on the part of John Deere."

We believe that this case is similar to *Nygard*. Although Zimprich was behind in his payments, there was evidence about AgriStor's agreement to defer repossession of the feed-storage system, from which the jury could infer that Zimprich had a continuing right to possession of the property at the time it was repossessed and that the repossession of the property was done under "inappropriate circumstances" and constituted "wrongful conversion and detention of the property" [*Zimprich v. North Dakota Harvestore Systems, Inc., supra,* 419 N.W.2d at 914], for which, under *Nygard*, punitive damages may be awarded. If Zimprich had a right to continued possession of the property because of an agreement with AgriStor, then AgriStor knew it and repossessed the property despite its agreement to defer repossession. From our review of the record, we conclude that there is evidence from which the jury could infer oppression, fraud, or malice on the part of AgriStor.

### 8.

AgriStor contends that the trial court erred in precluding evidence of the amount of Zimprich's settlement with Harvestore. We disagree. Offers of compromise are generally not admissible to prove liability or the amount of a claim. *C.B.D. v. W.E.B.,* 298 N.W.2d 493 (N.D. 1980). "Rule 408 of the North Dakota Rules of Evidence precludes using evidence of a compromise or offer of compromise as proof of liability for any other claim." *Weigel v. Rippley,* 283 N.W.2d 123, 129 (N.D.1979). Rule 408, F.R.Ev., from which our rule was drawn, "extends the exclusionary treatment not only to offers of compromise, but also to completed compromises when offered against a compromiser." 2 *Weinstein's Evidence,* ¶ 408[04] (1989). The objective of excluding evidence of compromise is to encourage compromise of disputed claims. 10 *Moore's Federal Practice* § 408.02 (1988). "The spectre of a subsequent use [of a settlement agreement] to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent." *Branch v. Fidelity & Cas. Co. of New York,* 783 F.2d 1289, 1294 (5th Cir.1986). The rule excludes evidence of settlements between litigants and third parties, including plaintiffs and third parties. *McInnis v. A.M.F., Inc.,* 765 F.2d 240 (1st Cir.1985). As the court stated in *McInnis, supra,* 765 F.2d at 247:

"In the context of settlements between a litigant and a third party, it is true that Rule 408 is more commonly invoked to bar the admission of agreements between a defendant and a third party to compromise a claim arising out of the same transaction as the one being litigated.... If the policies underlying Rule 408 mandate that settlements may not be admitted against a defendant who has recognized and settled a third party's claim against him, it is axiomatic that those policies likewise prohibit the admission of settlement evidence against a plaintiff who has accepted payment from a third party against whom he has a claim. The admission of such evidence would discourage settlements in either case. In addition, the relevance of the settlement to the validity of the claim cannot logically be considered stronger in the former instance than in the latter.... A number of recent federal cases have adopted this position, holding that Rule 408 bars evidence of settlements between plaintiffs and third party joint tortfeasors or former co-defendants." (Citations omitted.)

We conclude that the trial court did not err in excluding evidence of the amount of the settlement between Zimprich and Harvestore.

### 9.

AgriStor contends that the trial court's instruction on punitive damages [3]

---

**3.** The third paragraph of the trial court's exemplary-damage instruction stated:

"While a principal is liable to a third person for actual or compensatory damages for the wrongful conduct of his agent committed in transacting the business of the agency, including wrongful acts committed by the agent in and as a part of the transaction of the business, and for the agent's willful omission to fulfill the obligations of the principal exemplary or punitive damages may be awarded against the principal only if:

"in effect, outlined the doctrine of respondeat superior," which reinjected the vicarious liability claims which were released by Zimprich's settlement with Harvestore, and that this was an error which "mandates, at a minimum, the granting of a new trial." AgriStor's only objection at trial, however, other than that punitive damages should not be submitted to the jury at all, did not assert that the instruction reinjected a claim released by Zimprich's settlement with Harvestore:

> "A more specific objection with regard to the basic instruction on exemplary damages, the language starting with the third paragraph. The language in the third paragraph has no application here, there has been no showing of an agency relationship.

> "Granted, North Dakota Harvestore did the work at our direction, but that doesn't make them our agent, and there has been no proof beyond that."

The fact that Harvestore repossessed the feed-storage system at AgriStor's direction made the challenged language relevant to Zimprich's claim for exemplary damages.

Because we have determined that there was evidence from which the jury could draw the inferences that it did, the trial court did not err in denying Zimprich's motion for judgment notwithstanding the verdict. As we said in *Roberts v. Hail Unlimited, supra,* 358 N.W.2d 776 at 779 (N.D.1984):

> "The function of this court on review of a denial of a motion for judgment notwithstanding the verdict is to determine:
> " '... whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, reasonable men could reach but one conclusion as to the verdict....' *Nokota Feeds, Inc. [v. State Bank of Lakota]*,

"(1) the principal authorized or ratified the wrongful conduct upon which those damages are based;
"(2) the agent was unfit and the principal was reckless in employing him;
"(3) the agent was employed in a managerial capacity and acted within the scope of employment; or

*supra,* 210 N.W.2d [182] at 187 [ (N.D.1973) ].

"Therefore, if the evidence leads to one conclusion, and that conclusion was not reached by the jury, the granting of a judgment notwithstanding the verdict is proper."

A trial court's decision to deny a motion for a new trial will not be reversed on appeal unless the trial court manifestly abused its discretion. *Napoleon Livestock Auction, Inc. v. Rohrich, supra; Roberts v. Hail Unlimited,* 358 N.W.2d 776 (N.D. 1984). We find no error which "mandates, at a minimum, the granting of a new trial," as AgriStor contends, and we find no abuse of discretion in the trial court's denial of AgriStor's motion for a new trial.

The judgment and the order denying AgriStor's motion for judgment notwithstanding the verdict or a new trial are affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

"(4) the principal or his managerial agent ratified or approved the wrongful acts upon which the actual or compensatory damages are based."