**Shawn D. FREDERICKS and John Fredericks, Jr., Plaintiffs and Appellants,**

v.

**EIDE–KIRSCHMANN FORD, MERCURY, LINCOLN, INCORPORATED, Defendant and Appellee.**

**Civ. No. 900145.**

Supreme Court of North Dakota.

Oct. 31, 1990.

Nodland, Tharaldson & Dickson, Bismarck, for plaintiffs and appellants; argued by Thomas A. Dickson.

Pearce & Durick, Bismarck, for defendant and appellee; argued by B. Timothy Durick.

ERICKSTAD, Chief Justice.

Shawn D. and John Fredericks, Jr. (Fredericks), enrolled members of the Three Affiliated Tribes and residents of the Fort Berthold Reservation, have appealed from a district court judgment granting the motion of Eide–Kirschmann Ford, Mercury, Lincoln, Inc. (Eide) for summary judgment dismissing Fredericks' action to enforce a tribal court judgment and denying Fredericks' motion for summary judgment enforcing the tribal court judgment. We reverse and remand for entry of a judgment enforcing the tribal court judgment.

On May 14, 1983, Shawn D. Fredericks purchased a 1983 Ford pickup from Eide for $14,856. Eide received a down payment of $3,721.25. The remaining balance was to be paid, with interest, in four annual installments. John Fredericks, Jr., co-signed the retail installment contract as a "Second Buyer."

When Shawn Fredericks failed to pay the first installment, Eide sued him in tribal court by complaint dated September 12, 1984. Eide's complaint sought "payoff on the contract in the amount of $13,989.64 due as of September 12, 1984," and an order allowing it to "repossess and to sell [the pickup] and apply the proceeds of the sale against the amount of the Judgment herein." Eide also filed a motion for immediate repossession of the pickup.

On October 4, 1984, Eide repossessed the vehicle through self-help procedures in Bismarck.[1] By letter of October 9, 1984, counsel for Eide informed the clerk of the tribal court that "[e]ven though we have possession of Shawn Fredericks' vehicle, we will proceed with our action for a Judgment against him." On October 23, 1984, the tribal court issued an order directing Shawn Fredericks to show cause why Eide was not entitled to the immediate repossession of the vehicle.

At a hearing on December 21, 1984, Eide moved to amend its summons and complaint to include John Fredericks, Jr., as a defendant and informed the tribal court that it "intended to proceed to obtain a money Judgment against both defendants, and, following the sale of the motor vehicle, if so ordered by the Court, intended to execute on any balance remaining on the Judgment." On January 9, 1985, Eide filed an amended summons and complaint joining John Fredericks, Jr., as a defendant. In its January 10, 1985, pretrial brief, Eide urged that "it be entitled to a money Judgment for the full amount owed under the retail installment contract," that it be allowed to sell the pickup and apply the proceeds "against the amount of the Judgment," and that it be allowed "to execute on any balance which may remain on the Judgment after said proceeds have been applied."

In a January 18, 1985, memorandum opinion, the tribal court concluded that Eide's self-help repossession of Fredericks' vehicle in Bismarck violated the tribal repossession statute.[2] The tribal court al-

---

1. The tribal court had not yet ruled on Eide's right to possession of the vehicle.

2. The tribal repossession statute provides in part:

"The personal property of any Indian shall not be taken from within the exterior boundaries of the Fort Berthold Reservation under procedures of repossession, except in strict compliance with the following prescribed procedures:

"(1) Written consent to repossess such property from within the exterior boundaries of the Reservation shall be secured by the creditor from the Indian purchaser thereof at the time the repossession at issue is sought. Such written consent shall be retained by the creditor and exhibited to the Fort Berthold Tribal Court upon proper demand.

"(2) In the absence of such written consent, repossession shall be lawfully perfected by the creditor only by obtaining an order authoriz-

lowed the parties to file post-trial briefs on the matter of damages. In an April 1, 1985, post-trial brief on damages, Eide maintained that it did not violate the tribal repossession statute and that Fredericks "suffered no actual damages in this case."

On April 25, 1985, the tribal court ordered that Eide return the vehicle; that Eide be liable for damages for Fredericks' loss of use of the vehicle at a rate of $10 per day from October 4, 1984, until return of the vehicle; that Eide be liable for mileage, attorney fees, and telephone calls in the amount of $838.00; and that Eide prepare a new installment contract "for the sole signature of Shawn D. Fredericks" which "will use the starting figure representing the pay off of the previous contract as of the date of repossession."

Eide appealed the April 25, 1985, tribal court order to the Intertribal Court of Appeals, which ordered Eide to file a brief by September 30, 1985. On November 25, 1985, Eide sold the repossessed vehicle. In its order of January 27, 1986, the Intertribal Court of Appeals noted that Eide "failed to file the Appellant's Brief pursuant to Rule 4(c)." The court also observed

that on October 15, 1985, Eide's attorney [3] "notified the Court that he desired to withdraw as counsel and he also notified the Court that Eide Kirschmann did not desire to prosecute the above-entitled Appeal." The Intertribal Court of Appeals directed Eide to return the vehicle in accordance with the tribal court order, dismissed Eide's appeal, and remanded the case to the tribal court "for further proceedings consistent with the Tribal Court's Order and Judgment dated the 25th day of April, 1985."

On February 11, 1986, Fredericks moved to amend the tribal court's order to assess attorney fees and damages for Eide's sale of the vehicle in violation of the tribal court order. On February 21, 1986, Eide was served with a tribal court order to show cause why the tribal court's order of April 25, 1985, "should not be amended to the relief as the Defendants [sic] demand or as the Court shall determine." Eide failed to file any responsive pleadings and failed to appear at the April 11, 1986, hearing on the order to show cause. The tribal court's amended judgment of December 30, 1986, awarded Fredericks the following damages:

"1. Court Order of April 25, 1985:

| | | |
|---|---|---:|
| "A. | Mileage | $ 288.00 |
| "B. | Attorney Fees | $ 500.00 |
| "C. | Phone Calls | $ 50.00 |
| "D. | $10 per day loss of use from October of 1984 to April of 1986 | $ 5450.00 |

"2. Loss of Down Payment $ 3721.00
"3. Exemplary (punitive) Damages resulting in [sic] sale of vehicle in direct violation of Court's Order of April 25, 1985 $15000.00
"TOTAL OF ALL DAMAGES $25009.00
"Interest per Tribal Code 10% from date of April 25, 1985."

On January 9, 1987, Eide was served with notice of entry of the amended judgment.

Fredericks commenced this action in district court for enforcement of the amended tribal court judgment on May 3, 1989. Eide and Fredericks both filed motions for summary judgment pursuant to Rule 56, N.D.R.Civ.P. The district court granted Eide's motion for summary judgment of dismissal and denied Fredericks' motion for

ing and directing such repossession issued by the Fort Berthold Tribal Court in an appropriate legal proceeding."

summary judgment enforcement. Judgment was entered accordingly.

On appeal, Fredericks contends that the tribal court judgment should be enforced as a matter of comity. Eide contends that the tribal court lacked subject matter jurisdiction and that the tribal court judgment is not entitled to enforcement as a matter of comity.

3. Eide was represented by Gregory L. Bickle in tribal court.

Comity is a nation's voluntary recognition and execution of another nation's laws where the rights of individuals are concerned. *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Comity "promote[s] justice between individuals, and ... produces[s] a friendly intercourse between the sovereignties to which they belong." *Id.,* 159 U.S. at 165, 16 S.Ct. at 144, 40 L.Ed. at 109. Comity "is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy, or prejudicial to its interests." *Id.* Comity is "a willingness to grant a privilege not as a matter of right but out of deference and good will." *Lohnes v. Cloud,* 254 N.W.2d 430, 433 (N.D.1977).

"Every foreign judgment, of whatever nature, in order to be entitled to any effect, must have been rendered by a court having jurisdiction of the cause, and upon regular proceedings, and due notice. In alluding to different kinds of judgments, therefore, such jurisdiction, proceedings, and notice will be assumed. It will also be assumed that they are untainted by fraud...."

*Hilton v. Guyot, supra,* 159 U.S. at 166–167, 16 S.Ct. at 144, 40 L.Ed. at 109. The court enunciated a number of factors to consider in determining the conclusiveness of a foreign judgment as a matter of comity:

"When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as

by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect."

*Id.,* 159 U.S. at 205–206, 16 S.Ct. at 159–160, 40 L.Ed. at 123. If the foregoing factors exist, the merits of a foreign judgment should not ordinarily be retried:

"[if] there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact."

*Id.,* 159 U.S. at 202–203, 16 S.Ct. at 158, 40 L.Ed. at 122.

■ We recognize that there is a difference between a "foreign nation" and an "Indian nation," whose citizens are citizens of both the tribe and of our state. Indian tribes "hold a unique legal status as 'quasi-sovereign entities'" (*Lohnes v. Cloud, supra,* 254 N.W.2d at 433) with attributes of sovereignty "to the extent that sovereignty has not been withdrawn by federal statute or treaty." *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 14, 107 S.Ct. 971, 976, 94 L.Ed.2d 10, 18 (1987). "One of the attributes of tribal sovereignty is the power to adjudicate private civil disputes." *Mexican v. Circle Bear,* 370 N.W.2d 737, 741 (S.D.1985). "Tribal courts play a vital role in tribal self-government ... and the Federal Government has consistently encouraged their development." *Iowa Mut. Ins. Co. v. LaPlante, supra,* 480 U.S. at 14–15, 107 S.Ct. at 976, 94 L.Ed.2d at 19. Although there is a difference between a "foreign nation" and an "Indian nation," the doctrine of comity, as set forth in *Hilton v. Guyot, supra,* with regard to the recognition of foreign judgements in suits between citizens of different nations, has been applied to the enforcement of tribal court judgments. *See, e.g., Mexican v.*

*Circle Bear, supra,* and decisions cited therein. We consider an "Indian nation" as equivalent to a "foreign nation" to encourage reciprocal action by the Indian tribes in this state and, ultimately, to better relations between the tribes and the State of North Dakota.

Eide contends that the tribal court lacked subject matter jurisdiction. Eide relies on a portion of the tribal repossession statute —"personal property of any Indian shall not be taken from within the exterior boundaries of the Fort Berthold Reservation under procedures of repossession"— and argues:

> "Thus, whatever jurisdiction the court might have had when the summons and complaint was filed ended when the Fredericks caused their pickup to be taken from the Fort Berthold Reservation to the City of Bismarck....

> "The tribal law, by its own terms, only applies to repossessions occurring on the reservation. Additionally, the contract was executed in Bismarck, North Dakota, and the parties agreed that the North Dakota Commercial Code would apply to any remedies available upon default. Thus, the tribal court was attempting to impose tribal law upon a transaction that clearly had nothing to do with the Fort Berthold Reservation."

This argument also challenges the correctness of the tribal court's determination that Eide's repossession of Fredericks' pickup outside the Fort Berthold Reservation violated the tribal statute prohibiting repossessions of Indians' personal property within the exterior boundaries of the Fort Berthold Reservation without written consent of the Indian purchaser of the property or without a tribal court order.

■■■■ "Jurisdiction is the power to hear and determine a cause of action." *Schillerstrom v. Schillerstrom,* 75 N.D. 667, 32 N.W.2d 106, 122 (1948). "A court has subject matter jurisdiction if it has the authority, under the constitution and laws, to hear and determine cases of the general class to which the particular action belongs." *Reliable, Inc. v. Stutsman County Comm'n,* 409 N.W.2d 632, 634 (N.D.1987). "Jurisdic-

tion of the court does not depend upon whether its decision is right or wrong, correct or incorrect." *In re Edinger's Estate,* 136 N.W.2d 114, 120 (N.D.1965). A court "does not lose jurisdiction because it makes a mistake in determining either the facts or law or both." *Schillerstrom v. Schillerstrom, supra,* 32 N.W.2d at 122. When enforcement of a foreign judgment is sought as a matter of comity, jurisdiction of the foreign court is presumed. *Hilton v. Guyot, supra.* Eide has not persuaded us that the tribal court lacked subject matter jurisdiction and, therefore, has not overcome the presumption of jurisdiction.

We note that the Constitution and By-Laws of the Three Affiliated Tribes, Ch. 1, Subch. 3, § 2(a) provides:

> "a. Jurisdiction. The Tribal Court ... shall have exclusive original jurisdiction over:

> \*      \*      \*      \*      \*      \*

> "(2) All civil actions where the cause of action arose within the territorial jurisdiction of the courts, or in [sic] the property to be affected lies within the territorial jurisdiction of the courts; and, those cases where the parties have consented to tribal court jurisdiction in writing, by conduct, or by contract."

Eide consented to tribal court jurisdiction by filing suit in tribal court and by pressing its claim for a money judgment after it repossessed Fredericks' pickup outside the Fort Berthold Reservation.

■■■■ If the tribal court erred in its construction and application of the tribal repossession statute, Eide's remedy was to prosecute its appeal of the original tribal court judgment to completion and to appear in the tribal court after remand and appeal any adverse judgment that might have been entered. Eide should have completed the legal proceedings it began in tribal court:

> "As *National Farmers Union [Ins. Cos. v. Crow Tribe]* indicates, proper respect for tribal legal institutions requires that they be given a 'full opportunity' to consider the issues before them and 'to rectify any errors.' 471 U.S.

[845], at 857, 105 S.Ct. [2447], at 2454 [85 L.Ed.2d 818 (1985)]. The federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts. At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts."

*Iowa Mut. Ins. Co. v. LaPlante, supra,* 480 U.S. at 16–17, 107 S.Ct. at 976, 94 L.Ed.2d at 20. By failing to prosecute to completion the appeal it lodged with the Intertribal Court of Appeals, and by failing to take part in the subsequent proceedings it began by invoking the jurisdiction of the tribal court, Eide deprived the appellate court of the opportunity to review the determinations of the tribal trial court and deprived the tribal legal institutions of "a 'full opportunity' to consider the issues before them and 'to rectify any errors.'" 480 U.S. at 16, 107 S.Ct. at 976, 94 L.Ed.2d at 20.

Eide argues that "the legislative history supporting [§ 27–01–09, N.D.C.C.][4] indicates that confidence in the tribal courts within the State of North Dakota has not reached a level which would set the basis for recognition of tribal court judgments in state court." Section 27–01–09, adopted in 1989, requires county and district courts to recognize and enforce certain kinds of judgments by the tribal court of the Three Affiliated Tribes if the tribal judge "is a graduate of an accredited law school and holds a current valid license to practice law in at least one state"[5] and the tribal court similarly recognizes and enforces state court judgments under the same limitations. Section 27–01–09 was enacted well after this action arose and deals with what might be termed "family law" judgments. Section 27–01–09 is inapplicable to this action. As we read the statute and its legislative history, § 27–01–09 merely limits state courts' discretion to deny enforcement of tribal court judgments by requiring state courts to recognize and enforce certain tribal court judgments under some conditions. Section 27–01–09 does not limit state courts' discretion to voluntarily recognize and enforce tribal court judgments as a matter of comity.

In its memorandum opinion of January 18, 1985, the tribal court declared: "The Common Law is unknown to and not of any significance to the Tribes. The Tribal Code is not predicated on Anglo Saxon concepts and Common Law traditions." Eide argues from that declaration: "Obviously, until tribal courts are willing to come to recognize the laws of the State of North Dakota, there is little reason to grant recognition to their judgments." This court has held, however, that "comity does not rest upon mutuality or reciprocity." *Medical Arts Bldg. Ltd. v. Eralp,* 290 N.W.2d 241, 246 (N.D.1980).

Eide argues that the tribal court judgment should not be enforced as a matter of comity because "the tribal judge was not

---

**4.** *"27-01-09. Reciprocal recognition of certain state and tribal court judgments, decrees, and orders—Conditions.* The district courts and county courts shall recognize and cause to be enforced any judgment, decree, or order of the tribal court of the Three Affiliated Tribes of the Fort Berthold Reservation in any case involving the dissolution of marriage, the distribution of property upon divorce, child custody, adoption, an adult abuse protection order, or an adjudication of the delinquency, dependency, or neglect of Indian children if the tribal court had jurisdiction over the subject matter of the judgment, decree, or order. The tribal court judgment, decree, or order must be rendered by a judge who is a graduate of an accredited law school and holds a current valid license to practice law in at least one state. A state court may inquire as to the facts of the case or tribal law only to the

extent necessary to determine whether the tribal court had jurisdiction over the subject matter of the judgment, decree, or order and personal jurisdiction over the parties to the action. Recognition and enforcement of tribal court judgments, decrees, and orders under this section is conditioned upon recognition and enforcement of state court judgments, decrees, and orders by the tribal court of the Three Affiliated Tribes and tribal law enforcement agencies under the same limitations provided by this section for recognition and enforcement of tribal court judgments, decrees, and orders by state courts."

**5.** The tribal judge in this case, the Honorable Tom M. Beyer, was a licensed attorney and also served as a county judge.

guided by a jurisprudence of which this court should sanction," citing several examples:

(1) "In reality, the tribal court gave the Fredericks all of the damages claimed, in addition to $15,000.00 in punitive damages. The tribal law does not provide for punitive damages. Additionally, it should have been apparent that the tribal court had no authority for granting punitive damages in a contract case."

(2) "Of course, the court ignored all North Dakota law and specifically Section 41–01–05, N.D.C.C., which provides that parties to a contract in North Dakota can agree to apply whatever law they wish as long as it bears a reasonable relationship to the state. Of course, this would require the court to apply 'anglo-saxon concepts and common law traditions'."

(3) "For example, the court required the parties to enter into a new contract. Specifically, the court stated at item 4 page 3, 'that the defendants shall prepare an installment contract for the sole signature of Shawn D. Fredericks.' In other words, Eide–Kirschmann was supposed to remove Shawn's father, John Fredericks from any obligation and enter into a contract with Shawn D. Fredericks only. Of course, there is no authority in any jurisdiction within the United States for ordering parties to enter into a contract for the sale of a motor vehicle."

This court has held that a secured creditor's repossession of property under inappropriate circumstances may subject the secured party to liability for wrongful conversion and detention of the property, for which punitive damages may be awarded. *Zimprich v. AgriStor Credit Corp.*, 461 N.W.2d 425 (N.D.1990). We note, however, that the tribal court's award of punitive damages was not based on Eide's repossession of Fredericks' pickup, but on Eide's sale of the pickup in violation of the tribal court's April 25, 1985, order that Eide immediately return the pickup. If the tribal court erred in this respect, Eide's remedy was to provide the Intertribal Court of Appeals with an opportunity to rectify the error. *Iowa Mut. Ins. Co. v. LaPlante, supra.*

Eide sold Fredericks' pickup without prior notice to Fredericks, thereby ignoring § 41–09–50, N.D.C.C., which requires, with certain exceptions, a secured party to provide the debtor with "reasonable notification of the time after which any private sale or other intended disposition is to be made." Eide is thus in a poor position to complain that the tribal court ignored a North Dakota statute.

The tribal court's order that Eide prepare a new contract for Shawn D. Fredericks' signature apparently was an attempt to equitably adjust the parties' rights in light of Fredericks' default and Eide's self-help repossession of the pickup, which the tribal court concluded was a violation of the tribal repossession law. If the tribal court erred in this respect, Eide's remedy was to provide the Intertribal Court of Appeals with an opportunity to rectify the error. *Iowa Mut. Ins. Co. v. LaPlante, supra.*

Furthermore, the examples cited by Eide are matters constituting the merits of the tribal court judgment. When the enforcement of a judgment as a matter of comity is in issue, absent a showing of prejudice, fraud, or "other special reason why comity of this nation should not allow it full effect, the merits of the case should not ... be tried afresh ... upon the mere assertion of the party that the judgment was erroneous in law or in fact." *Hilton v. Guyot, supra,* 159 U.S. at 202–203, 16 S.Ct. at 158, 40 L.Ed. at 122. Eide has not shown any such "special reason." The merits will, therefore, not "be tried afresh."

Although Eide challenged the tribal court's jurisdiction, it did not overcome the presumption that the tribal court had jurisdiction of the cause and the parties; Eide did not allege or show the presence of fraud, any irregularity in the tribal court proceedings other than asserted errors which might have been remedied on appeal, or any lack of due notice. It appears to us that the tribal court judgment sought to be enforced was "rendered by a competent

court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them" and that the tribal court's "proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record." *Hilton v. Guyot, supra,* 159 U.S. at 205–206, 16 S.Ct. at 159, 40 L.Ed. at 123. Eide has not drawn our attention to any tribal law or custom underlying the tribal court judgment that "is so abhorrent to the policy expressed in state law that it may not be given effect." *Mexican v. Circle Bear, supra,* 370 N.W.2d at 742. We conclude that the district court should have enforced the tribal court judgment as a matter of comity. We, therefore, conclude that the district court erred in granting Eide's motion for summary judgment of dismissal [6] and in denying Fredericks' motion for summary judgment enforcing the tribal court judgment.

The district court judgment is reversed and the matter is remanded for entry of a judgment enforcing the tribal court judgment as a matter of comity.

GIERKE, VANDE WALLE, MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the enlightened opinion authored for the Court by the Chief Justice. I write separately to note that the trial court apparently agreed with much of the philosophy contained in that opinion for it cited with approval the following statements from *Stanford Law Review:*

"But once the tribes adopt appeals procedures and a Court of Indian appeals is established to tie the tribal courts to the federal [state] system, no good reason remains to deny tribal courts full faith and credit. When these safeguards are

in place, Congress [the legislature] should extend full faith and credit to tribal courts to further advance the Indian policy of self-determination." [Bracketed language is the trial court's.] Note, Recognition of Tribal Decisions in State Courts, 37 Stan.L.Rev. 1397, 1424 (1985).

It appears that the issue in this case focuses on which branch of the government is to extend full faith and credit to the tribal courts that have in place appropriate procedures and appeals mechanisms to rectify any errors committed by the trial courts of the tribe.[1] Although the Legislature may not have granted full faith and credit to all judgments of the courts of the Three Affiliated Tribes, I agree with the majority opinion that the judicial branch is not prohibited from doing so. The matter of comity is as much a matter for the courts to decide as it is for the Legislature to decide, if not more. *See e.g., Mexican v. Circle Bear,* 370 N.W.2d 737 (S.D.1985), and cases cited therein. Because the Three Affiliated Tribes have procedures and mechanisms in place which could have been used to rectify these errors, we are holding that, in this instance, the trial court was in error in not exercising its discretion to grant full faith and credit to the judgment of the tribal court.

The legislative history of section 27–01–09, NDCC, to which the majority opinion refers, clearly reveals that statute is not intended as a limitation on the power of the judiciary to recognize tribal judgments. Rather, as that history indicates, the legislation originally enacted in 1987 with a two-year "sunset" provision was introduced at the behest of the Three Affiliated Tribes. It was introduced because of a particular problem which arose in the area of domestic violence, child custody and juvenile delinquency. Thus, the enactment of the statute does not indicate an intent to

---

**6.** Even without Fredericks' cross-motion for summary judgment, summary judgment against Eide would have been appropriate under Rule 56(c), N.D.R.Civ.P., which provides in part: "Summary judgment, when appropriate, may be rendered against the moving party."

**1.** Perhaps the greatest test of the principle of comity is to affirm a judgment which we believe

to be in error. In this instance it appears clear to me that the tribal statute did not apply to repossessions which took place off the Reservation and that the tribal court's authority to require the return of the pickup and impose the other relief contained in the judgment is questionable.

limit the authority of the judiciary to recognize tribal-court judgments under the concept of comity. It is, as the majority opinion notes, a limitation on the discretion of the courts of this State to deny comity to certain judgments. Therefore, the rule that the expression of one thing in a statute excludes all others is not applicable. *Juhl v. Well*, 116 N.W.2d 625 (N.D.1962). [Rule should be applied only where it appears to point to legislative intent and it does not apply if there is some special reason for mentioning one thing and none for mentioning a second.]

Finally, the legislative history discloses that the other tribes in North Dakota were contacted to determine if they desired to be included in the legislation and that they did not respond. One of the witnesses before the House Judiciary Committee which considered the legislation, in response to a question from a member of the committee, indicated that the other tribes do not have law-trained judges and an appellate procedure which would meet the requirements necessary to grant recognition to the judgments of those tribal courts. If that situation still exists, our opinion today should not be considered a carte blanche invitation to recognition of judgments of those tribal courts by the North Dakota courts.